Appendix 1

Appendix 2

**HUGHES AIRCRAFT COMPANY, William B. McLean and Walter C. Finch, Plaintiffs,**

v.

**MESSERSCHMITT–BOELKOW–BLOHM, GmbH, Defendant.**

**No. 74–366–Orl–Civ–R.**

United States District Court, M. D. Florida, Orlando Division.

Aug. 23, 1977.

Leon H. Handley of Gurney, Gurney & Handley, P. A., Orlando, Fla., Dugald S. McDougall and Keith V. Rockey of McDougall, Hersh & Scott, Chicago Ill., John A. Sarjeant, Los Angeles, Cal., for plaintiffs.

Robert W. Duckworth of Duckworth, Hobby, Orman, Allen & Pettis, P. A., Orlando, Fla., David Toren of Toren, McGeady & Stanger, P. C., New York City, for defendant.

## MEMORANDUM OF DECISION

REED, District Judge.

This case is before the court on the defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment filed herein on 13 August 1976. Defendant bases this motion on two grounds:

1) The court lacks subject matter jurisdiction over this cause because the allegedly infringing apparatus was "used or manu-

factured by or for the United States" within the meaning of 28 U.S.C. § 1498(a);

2) Personal jurisdiction over this defendant is lacking under 22 U.S.C. § 2356(a)(1).

Title 28, United States Code, Section 1498(a) vests exclusive jurisdiction in the Court of Claims over patent infringement claims arising upon either one or both of the following two grounds:

1) unlicensed use or manufacture of a patented invention by the United States directly; and/or

2) unlicensed use or manufacture of a patented invention for the United States and with its authorization or consent.

Plaintiffs brought this action alleging infringement by defendant Messerschmitt-Boelkow-Blohm, GMBH (MBB) of United States Letters Patent No. 3,758,051 and of United States Reissue Letters Patent No. 26,887. Plaintiffs allege that the HELIOS satellite embodies certain control mechanisms for governing and stabilizing its position in space which were invented by the respective patentees. The allegation is that the HELIOS satellite infringes on both of plaintiffs' Letters Patent.

For the reasons stated below, this court finds that the patented invention covered by United States Letters Patent No. 3,758,051, entitled "Velocity Control and Orientation of a Spin-Stabilized Body" and by United States Reissue Letters Patent No. 26,887, entitled "Proportional Navigation System for a Spinning Body in Free Space," which plaintiffs allege were infringed, was used by the United States. Jurisdiction over this action thus lies exclusively in the Court of Claims. As a result, the court finds it unnecessary to determine whether the invention was also used for the United States with its authorization or consent. Additionally, the court declines to consider whether personal jurisdiction is lacking under 22 U.S.C. § 2356(a)(1).

In 1966 former President Johnson and former Chancellor Erhard agreed that the United States and the Federal Republic of Germany would undertake a major coopera-

tive space project with an express purpose of substantially increasing and demonstrating the space technological capability of Germany (see Exhibit VI to Ziegler Affidavit to Motion to Dismiss filed 13 August 1977). The German Ministry for Scientific Research and NASA agreed to cooperate in a project for the exploration of interplanetary space to be known as Project HELIOS. Id. The two governmental agencies entered into a Memorandum of Understanding (MOU) which outlines the responsibilities of each country (see Exhibit C to Empacher Affidavit to Motion to Dismiss filed 13 August 1977).

The MOU states the primary objective of Project HELIOS is "to investigate the properties of the processes in interplanetary space in the direction of and close to the sun by developing, launching, and operating automated spacecraft." "The general scientific objective is to provide new understanding of fundamental solar processes and solar terrestrial relationships by the study of phenomena such as solar wind, magnetic and electric fields, cosmic rays, and cosmic dust." (Id. at p. 3). A further objective was to "provide German and U. S. experimenters the opportunity of designing and flying a well-integrated set of experiments aimed at specific investigations of the properties and processes in interplanetary space . . . ." (Exhibit VI to Ziegler Affidavit, p. 14). A secondary objective of the HELIOS project was to advance the technical and technological expertise of German industry (Exhibit B to Empacher Affidavit, Mission Definition Group Report).

The primary German responsibilities were to:

A) Develop the HELIOS spacecraft, including scientific instrumentation of the German experiments;

B) Operate and control the spacecraft from a Project Control Center, utilizing ground facilities located in Germany and those of the NASA Deep Space Network; and

C) Provide the data received to the experimenters for their analysis and publication.

The primary NASA responsibilities were to:

A) Provide instrumentation for United States sponsored experiments that are agreed elements of the payload;

B) Supply those parts of the spacecraft and ground checkout equipment peculiar to the United States sponsored experiments;

C) Provide a launch vehicle of the Atlas/Centaur/TE 364–4 class, payload adapter section (including separation system), spin table, and shroud for each mission;

D) Launch the spacecraft;

E) During Phases I and II, to provide tracking and data acquisition support using available United States near earth deep space, and space flight operations facilities;

F) During Phase III, to provide for the use of elements of the Deep Space Network (DSN) which are mutually agreed to be necessary;

G) Reduce, analyze and distribute data in accordance with a mutually agreed plan;

H) Make available such training of German personnel in German areas of responsibility for direct utilization in this joint project as may be requested by Germany and as is feasible within the limitations of NASA operational requirements;

I) Provide relevant technical consultation and technical data as mutually agreed; and

J) Provide technical assistance in testing the spacecraft and review final acceptance tests of the spacecraft.

Exhibit C to Empacher Affidavit, Memorandum of Understanding.

The affidavit and exhibits presented in support of defendant's motion clearly demonstrate the joint nature of the HELIOS project. From its inception the project has been termed a cooperative effort between the United States and Germany. Although an express purpose of the project was to substantially increase and demonstrate the space technological capability of Germany, the MOU emphasizes that the project is for the mutual benefit of both countries.

The United States benefited considerably from project HELIOS. Three of the ten experiments on board the HELIOS were American. The results obtained by HELIOS experiments constituted an extension of the Mariner-Venus and Mariner-Venus-Mercury missions of the United States and closed a gap in the interplanetary program of the United States (Exhibit G to Empacher Affidavit).

The joint participation in the project by the United States is also shown by the expenditure of $80 million dollars and 360 man years of effort. The joint nature of the project enabled the United States to carry out a major scientific mission at a time when the United States could not afford to expend large amounts of time or money on such projects.

Title 42, United States Code, Section 2451(c)(7) gives NASA authority to become involved in projects such as HELIOS. The joint nature of the project is in keeping with the guidelines established by NASA pursuant to that statute. These guidelines provide for:

1) Designation by each participating government of a central civilian agency for the negotiation and supervision of joint efforts;

2) Agreement upon specific projects rather than generalized programs;

3) Acceptance of financial responsibility by each participating country for its own contributions to joint projects;

4) Projects of scientific validity and mutual interest; and

5) General publication of scientific results (Exhibit VI to Ziegler Affidavit, p. 19).

The Court of Claims recently considered this same issue in *Hughes Aircraft Co. v. United States*, 534 F.2d 889, 209 Ct.Cl. 446 (1976). That case involved the alleged infringement of a patent pursuant to the United States involvement with the United Kingdom in a joint defense satellite communications program (Skynet II). The patent involved in the Court of Claims case is the same patent as is involved here.

The circumstances involved in the Skynet program are similar to the HELIOS project. Skynet II was a product of cooperative defense efforts of the United Kingdom and the United States. The system is used primarily by the United Kingdom.

A stronger case for "use by the United States" can be made in this suit. While the Skynet program was a cooperative defense effort, no money was expended by the United States. All Air Force funds used were appropriated funds which were subsequently reimbursed with United Kingdom funds. The entire structure, unlike the HELIOS of which 3 out of 10 experiments were American, was British. Many of the responsibilities assumed by the United States in the Skynet program were the same as in the HELIOS project. The testing of the satellite before launch, the launch itself, and the tracking of the satellite after launch were all functions under the control of the United States. NASA's ground stations still participate in the tracking and data acquisition of the HELIOS even though primary responsibility has been turned over to German stations (see Empacher Affidavit, p. 9).

█ Since the HELIOS project was a joint effort of the United States and Germany, any use made of the satellite is a use by the United States. Even though the satellite, with the exception of the three United States experiments, was made by MBB under contract to Germany, the satellite was used by both Germany and the United States jointly, in carrying out their cooperative space missions. The court thus finds that the alleged infringement was the result of a use by the United States.

For the foregoing reasons, the court finds that there is no genuine issue of material fact as to the use by the United States of the allegedly infringing apparatus. The court, therefore, lacks jurisdiction of this cause and the motion for summary judgment should be granted.