**Albert L. DE GRAFFENRIED, Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

**No. 541–80C.**

United States Court of Federal Claims.

Oct. 4, 1993.

essary to reach the other issues raised by defen-       dant.

Richard C. Conover, Bozeman, MT, for plaintiff.

Chun–I Chiang, with whom were Asst. Atty. Gen. Stuart M. Gerson and Vito J. DiPietro, Director, Washington, DC, for defendant. John Fargo, of counsel.

## OPINION

ANDEWELT, Judge.

In this patent action filed pursuant to 28 U.S.C. § 1498(a), plaintiff Albert L. de Graffenried, sought compensation from the United States for the unauthorized use of United States Patent No. 3,217,598 (the '598 patent). The '598 patent covers a system used for controlling "runout," i.e., misalignment of a cutting tool during deep boring operations. In two prior decisions, this court concluded that defendant is liable for the unauthorized use of plaintiff's patent, De Graffenried v. United States, 20 Cl.Ct. 458 (1990) (De Graffenried I), and awarded "reasonable and entire compensation" for such unauthorized use, De Graffenried v. United States, 25 Cl.Ct. 209 (1992) (De Graffenried II). This action is presently before the court on plaintiff's application for fees and expenses under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412.

The EAJA permits this court, under specified conditions, to grant fees and expenses to a "prevailing party" in a suit against the United States. Herein, defendant contends that plaintiff is not a "prevailing party" and that, in any event, even assuming plaintiff is a "prevailing party," plaintiff has not satisfied the statutory prerequisites for such an award. For the reasons set forth below, this court concludes that plaintiff is a "prevailing party," but plaintiff has not satisfied the EAJA prerequisites for an award of fees and expenses.

## I.

Pursuant to a stipulation submitted by the parties after the court's decision in *De Graffenried II*, the court granted plaintiff an award, including delay damages, of approximately $542,000. Notwithstanding this substantial damage award, defendant contends that plaintiff is not a "prevailing party" because an action brought under 28 U.S.C. § 1498(a) is an "eminent domain proceeding" and plaintiff does not qualify as a prevailing party in such a proceeding under the definition contained in 28 U.S.C. § 2412(d)(2)(H). Section 2412(d)(2)(H), provides:

"[P]revailing party," in the case of eminent domain proceedings, means a party who obtains a final judgment (other than by settlement), exclusive of interest, the amount of which is at least as close to the highest valuation of the property involved that is attested to at trial on behalf of the property owner as it is to the highest valuation of the property involved that is attested to at trial on behalf of the Government.

Excluding delay damages, the court awarded plaintiff approximately $89,000. Defendant's expert testified at trial, in effect, that an appropriate award, excluding delay damages, was approximately $70,000, and plaintiff's expert testified that an appropriate award, in effect, was in the order of $5–16 million. Clearly, defendant's expert's highest valuation is much closer than plaintiff's expert's to the court's ultimate damage award. Therefore, if plaintiff's action under 28 U.S.C. § 1498(a) is an "eminent domain proceeding," then plaintiff would not be a "prevailing party" within the meaning of 28 U.S.C. § 2412(d)(2)(H) and, hence, would not be entitled to recover fees and expenses.

## II.

Section 1498(a) does not anywhere state that an action thereunder constitutes an "eminent domain proceeding." It provides, in pertinent part:

Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture.

To support its position that an action under Section 1498(a) does constitute an "eminent domain proceeding," defendant cites a series of cases in which courts have resorted to eminent domain precedent when calculating "reasonable and entire compensation" under Section 1498(a). *Leesona Corp. v. United States*, 220 Ct.Cl. 234, 251–52, 599 F.2d 958, 969, *cert. denied*, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979); *Pitcairn v. United States*, 212 Ct. Cl. 168, 189–97, 547 F.2d 1106, 1120–24 (1976); *Tektronix v. United States*, 213 Ct.Cl. 257, 268, 552 F.2d 343, 349 (1977). Perhaps the strongest support for defendant's argument is found in *Leesona*, in which the Court of Claims concluded that treble damages, which are available against private parties in a patent infringement action, are not available against the government in a Section 1498(a) action for unauthorized use of a patent. Therein, the court made the following comments concerning the relationship between Section 1498(a) and eminent domain:

The theory for recovery against the government for patent infringement is not analogous to that in litigation between private parties. When the government has infringed, it is deemed to have "taken" the patent license under an eminent domain theory, and compensation is the just compensation required by the fifth amendment.

\* \* \* \* \* \*

28 U.S.C. § 1498 . . . is essentially an Act to authorize the eminent domain taking of a patent license, and to provide just compensation for the patentee. . . .

220 Ct.Cl. at 244, 246, 599 F.2d at 964, 966.

These statements, however, are not controlling in the instant action because they constitute *dicta*, and, in any event, do not

address the precise issue raised herein. While the *Leesona* court indicated that Section 1498 was founded upon "an eminent domain *theory* " (emphasis added) and was *"essentially* an Act to authorize the eminent domain taking of a patent license" (emphasis added), the court did not purport to interpret 28 U.S.C. § 2412(d)(2)(H) and, hence, did not address whether a Section 1498(a) action is an "eminent domain proceeding" thereunder.

Because there appears to be no controlling precedent on point, it falls on this court to interpret the reach of the phrase "eminent domain proceeding" in Section 2412(d)(2)(H). Upon consideration, although plausible arguments can be made on both sides of the issue, the far more compelling argument is that Section 1498(a) actions are not "eminent domain proceedings" and, hence, the definition of "prevailing party" in Section 2412(d)(2)(H) does not apply.

The argument in favor of viewing Section 1498(a) actions as "eminent domain proceedings" under Section 2412(d)(2)(H) proceeds essentially as follows. Eminent domain is not limited to real property but rather involves the government's taking of any type of private property. *See Black's Law Dictionary* 523 (6th ed. 1990) (eminent domain is "[t]he power to take private property for public use.") The patent laws create substantial private property rights. Pursuant to 35 U.S.C. § 154, a patent grant includes "the right to exclude others from making, using, or selling the [patented] invention throughout the United States." Pursuant to 35 U.S.C. § 261, "patents ... have the attributes of personal property." Thus, when the government uses a patented invention without a license, the government violates the exclusive right granted in the patent laws and thereby, in effect, "takes" the property for public use in much the same way as the government "takes" real or tangible property when it assumes control over the property for public use. A Section 1498(a) proceeding, therefore, should be deemed an "eminent domain proceeding" because such a proceeding represents Congress' chosen method for assessing the fair compensation due a patent owner for the government's taking of private patent property for public use.

The counter argument to the effect that Section 1498(a) actions are not "eminent domain proceedings" has three parts. First, while a Section 1498(a) action may have a similar theoretical basis to an eminent domain proceeding, a Section 1498(a) action cannot constitute an "eminent domain proceeding" because in a technical sense, the United States has not "taken" any property. As a general legal matter, absent some statutory prohibition, an individual who lawfully becomes aware of another individual's invention is free to produce and use that invention. Therefore, the metes and bounds of an inventor's property interest in an invention is defined by the statutory framework that restricts other individuals from using the invention. Herein, plaintiff's patent was granted in 1965, and at that time, the existing statutory framework included not only 35 U.S.C. § 154, which generally grants a patent owner the right to exclude, but also Section 1498(a), which grants the government the absolute right, whether or not licensed, to use any patented invention. In view of Section 1498(a), a patent owner can have no expectation of excluding the government from using his or her invention, and the sole remedy available for the government's unlicensed use of the patent is the right to secure "reasonable and entire compensation."

Because a patent owner's property rights under the applicable statutory scheme do not include the right to exclude the government from using his or her patented invention, when the government uses a patented invention, it does not "take" any property interest that belongs to the patent owner. Stated in another way, the government does not have to resort to exercising its sovereign power of eminent domain to utilize a patent owner's patented invention because the statutory framework that defines a patent owner's property rights gives the government the authority to use all patented inventions. Thus, the govern-

ment cannot "take" what it already possesses.

■ Second, the stark differences between a typical Section 1498(a) suit and a typical eminent domain proceeding support the argument that the "eminent domain proceedings" to which Section 2412(d)(2)(H) refers do not encompass Section 1498(a) actions. In a typical eminent domain proceeding, the government has chosen to exercise its sovereign power and to "take" private property for public use, and the only issue before the court is to determine the value of that property. *McCandless v. United States*, 298 U.S. 342, 348, 56 S.Ct. 764, 766, 80 L.Ed. 1205 (1936) ("In an eminent domain proceeding, the vital issue— and generally the only issue—is that of just compensation"). Employing the Section 2412(d)(2)(H) definition of "prevailing party" in such actions makes perfect sense because where "valuation" is the main issue litigated, a party can be said to prevail if its expert's valuation is closer than its opponent's to the court's ultimate value determination.

A typical Section 1498(a) action, however, is far different from such an "eminent domain proceeding" because in a typical Section 1498(a) action the issue of liability is hotly contested and consumes a large part of the total litigation time.[1] The liability phase ordinarily includes a determination of a patent's validity and a determination of whether the patent claims cover the alleged device used by the government. In this context, if defendant's argument herein were adopted and Section 2412(d)(2)(H) were found controlling, the determination of a "prevailing party" in a Section 1498(a) action would completely ignore the litigation's liability phase, and instead would focus exclusively on the narrow and often less expensive to litigate issue of valuation. It simply is not apparent in a Section 1498(a) proceeding that Congress would have intended such a drastic departure from the traditional definition of "prevailing party," *i.e.*, that " 'plaintiffs may be

considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' " *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir. 1978)).

Third, the legislative history of the EAJA reveals no suggestion that Congress intended to include Section 1498(a) actions within the scope of Section 2412(d)(2)(H) "eminent domain proceedings" and, in fact, suggests to the contrary. Prior to its 1985 amendment, which incorporated Section 2412(d)(2)(H), the EAJA did not contain any definition of the term "prevailing party." The House Report of the Committee on the Judiciary indicates that Section 2412(d)(2)(H) was added to the EAJA in response to two specific appeals court decisions which addressed the valuation of land in a condemnation case. *United States v. 329.73 Acres of Land*, 704 F.2d 800 (5th Cir.1983); *United States v. 101.80 Acres of Land*, 716 F.2d 714 (9th Cir.1983). The report explains Congress' rationale in adopting Section 2412(d)(2)(H) and does not reveal any intent to address any legal actions other than typical condemnation cases in which the central issue is property valuation. The report states:

> The Committee adopted this amendment to clarify the status of condemnation actions under the [EAJA]. Condemnation actions are cases in which the United States acquires private property by eminent domain and the property owners litigate the amount to be paid as compensation. Until recently, the courts had been unanimous in holding that the [EAJA] did not apply to condemnation cases. However, two recent court of appeals decisions have held that EAJA does apply to condemnation cases, thus creating the need for the amendment. The amendment relating to condemnation cases has two purposes. First, it makes

---

1. Herein, for example, the trial on the liability phase lasted 10 days, while the trial on the damages phase lasted only three days.

it clear that condemnation cases are covered by the [EAJA]. Second, it provides a standard for determining who the prevailing party would be in such actions.

\* \* \* \* \* \*

The Committee expects that this amendment will terminate the uncertainty which currently exists due to continuing litigation over who is the prevailing party in condemnation actions. The Committee also hopes that the amendment will result in bringing the Government and the property owner closer together in their land valuations, since they would both have the extra incentive of being determined the prevailing party under the [EAJA].

Nothing in the definition of "prevailing party" for the purposes of condemnation proceedings is meant to limit the definition of "prevailing party" under other circumstances. The [EAJA], as originally enacted, has an expansive view of the term "prevailing party."

H.R.Rep. No. 120, 99th Cong., 1st Sess. pt. I., at 18–19 (1985), *reprinted in* 1985 U.S.C.C.A.N. 132, 147 (footnotes omitted).

Thus, it appears that Section 2412(d)(2)(H) was aimed at a narrow class of cases, *i.e.*, condemnation cases, in which there was a dispute among the various courts as to the applicability of the EAJA. A Section 1498(a) action cannot be characterized as a traditional "condemnation proceeding," and herein, plaintiff has not cited any case law suggesting that in 1985, when Congress amended the EAJA, there was any dispute among the courts as to whether a prevailing plaintiff in a Section 1498(a) patent action could recover fees and expenses under the EAJA.

Because the court concludes that a Section 1498(a) action is not an "eminent domain proceeding" within the meaning of Section 2412(d)(2)(H), the definition of a "prevailing party" contained in Section 2412(d)(2)(H) does not apply and the court must resort to the general definition of "prevailing party" set forth in *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. *See also Commissioner v. Jean*, 496 U.S. 154, 160,

110 S.Ct. 2316, 2319, 110 L.Ed.2d 134 (1990) (applying the *Hensley* definition of "prevailing party" to the EAJA). Defendant raises some minor arguments to support its contention that plaintiff is not a prevailing party under this definition, but none is significant. Because plaintiff demonstrated at trial that his patent is not invalid, that the government used the patented invention, and that plaintiff is entitled to a significant damage award, plaintiff has satisfied the requirements of a "prevailing party" under *Hensley*.

### III.

Plaintiff alleges that as a "prevailing party," he is entitled to secure fees and expenses under Section 2412(b), which provides, in pertinent part: "The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award." Plaintiff contends that defendant is liable for fees and expenses under Section 2412(b) for two distinct reasons.

### A.

■ First, plaintiff alleges that defendant is liable under the common law basis for fees and expenses because defendant engaged in bad faith actions against plaintiff. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975); *F.D. Rich Co. v. United States*, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974). Plaintiff bases his allegation of bad faith primarily on defendant's (1) denial from 1965 to 1978 that it was using plaintiff's patented invention, (2) failure to disclose to plaintiff, prior to the trial on the accounting phase, that it had purchased four machines which employed plaintiff's patented technology, (3) assertion of statute of limitations and laches defenses, and (4) failure to produce in a timely manner certain documents, which plaintiff characterizes as "smoking gun" documents.

This court has reviewed the record in its entirety and concludes that plaintiff has

not established that defendant acted in bad faith. *See Schuenemeyer v. United States,* 776 F.2d 329, 333 (Fed.Cir.1985); *United States v. Ford,* 737 F.2d 1506, 1509 (9th Cir.1984) ("the burden is on the prevailing party to show bad faith"). As to defendant's denial from 1965 to 1978 that it was using plaintiff's patented technology, in 1966, defendant informed plaintiff as to the basis for its denial. *See De Graffenried I,* 20 Cl.Ct. at 487–88. Although the court ultimately disagreed with defendant's conclusion, the conclusion was at least plausible and plaintiff has not demonstrated that it was offered in bad faith. As to the purchase of four machines, defendant had no legal duty to disclose the purchase prior to the litigation and plaintiff has not demonstrated any bad faith in the timing of that disclosure after the case was filed.

■ Turning to the statute of limitations and laches defenses, the court concludes that these defenses were sufficiently supported under law so that defendant's presenting them to the court did not constitute bad faith. Defendant based its laches defense on its contention that plaintiff should have known about defendant's unauthorized use of plaintiff's invention by at least 1971 based, *inter alia,* on five years of inquiry by plaintiff, the indication in a May 1968 meeting that a rival company had copied plaintiff's invention for use by defendant, and a May 1971 letter suggesting that defendant was using "runout" technology. Although this court ultimately rejected defendant's focus on 1971 as a crucial date for laches purposes, defendant's position was plausible and proffering it to the court did not constitute bad faith. As to defendant's statute of limitations defense, which defendant raised for the first time during the trial on the accounting phase, defendant again proposed 1971 as the crucial date for essentially the same reasons. The statute of limitations commences to run when a plaintiff knew or reasonably should have known about the cause of action. *Hopland Band of Pomo Indians v. United States,* 855 F.2d 1573, 1577 (Fed. Cir.1988). Defendant contended that because plaintiff should have known of defendant's unauthorized use by at least 1971, the six-year statute of limitations for Court of Federal Claims actions (28 U.S.C. § 2501) had run prior to plaintiff filing suit on October 6, 1980. Again, this contention, while not accepted by the court, was reasonable and did not constitute bad faith.

Finally, as to the "smoking gun" documents, plaintiff has not demonstrated that defendant intentionally delayed producing these documents. Moreover, while these documents may have aided plaintiff, they were hardly so compelling in terms of the merits of the case as to fit the moniker of "smoking gun."

### B.

■ Second, as an alternative ground, plaintiff alleges a Section 2412(b) entitlement to fees and expenses "under the terms of [a] statute," specifically under the terms of 35 U.S.C. § 285, which provides: "The court in exceptional cases may award reasonable attorneys fees to the prevailing party." In *Spindelfabrik Suessen–Schurr Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft,* 829 F.2d 1075, 1084 (Fed.Cir.1987), the Court of Appeals for the Federal Circuit found the requisite exceptional circumstances present where a private party patent infringer, *inter alia,* sought to design around a patented invention, failed, and then willfully and deliberately infringed the patent. Herein, plaintiff argues that the same circumstances exist in the instant action and that pursuant to Section 2412(b), the "exceptional case" standard used in *Spindelfabrik* against a private infringer must apply against the government. Specifically, plaintiff argues that because defendant is liable under Section 2412(b) for "fees and expenses ... [for which] any other party would be liable ... under the terms of any statute which specifically provides for such an award," and because under Section 285 any other party using the patent without authorization would be liable for fees and expenses in "exceptional cases," defendant must also be liable under Section 2412(b) for such an award in "exceptional cases."

But this court does not interpret Section 2412(b) as demanding such a result. A suit such as *Spindelfabrik* against a private party for infringement and a suit such as the instant action against the government for unauthorized use of a patent, are distinct actions brought under different titles of the United States Code. Patent infringement actions are brought against private parties under 35 U.S.C. § 281. Section 281 grants a patent owner a "remedy by civil action for infringement of his patent," and the remedies potentially available in such a civil action are set forth respectively in 35 U.S.C. §§ 283 ("Injunction"), 284 ("Damages"), and 285 ("Attorney fees"). In contrast, the government's sole liability for the unauthorized use of a patented invention is set forth in 28 U.S.C. § 1498(a). While the causes of action in the two titles are analogous (*i.e.,* both address the unauthorized use of a patent), Title 28 establishes distinct remedies from those available under Title 35. As described above, unlike Title 35, where injunctive relief is available to stop a private party from using a patent, 28 U.S.C. § 1498(a) provides that "the owner's remedy [is] for the recovery of ... reasonable and entire compensation," *i.e.,* no injunction precluding use of the patent would lie against the government.

Plaintiff does not dispute the difference in these statutory schemes. Rather, plaintiff argues, in effect, that Section 2412(b)'s mandate is so broad as to require applying the standards in Title 35 for assessing fees and costs in a patent infringement action against a private party to an analogous, albeit distinct, type of suit against the government under Title 28. But courts interpreting Section 2412(b) have refused to extend the statute's reach to situations involving violations of analogous but distinct statutes. *Lauritzen v. Lehman,* 736 F.2d 550, 559 (9th Cir.1984) (the United States is liable for attorney fees "where the government has violated a particular substantive statute, and attorney's fees may be awarded against any other party for violation of *that* statute" (emphasis added)); *Unification Church v. INS,* 762 F.2d 1077, 1080 (D.C.Cir.1985); *Premachandra v. Mitts,*

753 F.2d 635 (8th Cir.1985); *Saxner v. Benson,* 727 F.2d 669 (7th Cir.1984), *aff'd sub nom. Cleavinger v. Saxner,* 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985). *See also United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980) (waivers of sovereign immunity must be strictly construed). This approach would seem especially appropriate here because as described above, Congress intended and provided for distinct remedies in a patent infringement action against a private party and in an unauthorized use of a patent action against the United States.

In any event, even assuming Section 2412(b) makes fees and expenses available to prevailing Section 1498(a) plaintiffs in "exceptional cases," this court would not classify the instant action as "exceptional." The similarity to *Spindelfabrik* is not controlling. Because of the differences in the statutory schemes of Title 28 and Title 35, facts which would constitute "exceptional circumstances" in a patent infringement action against a private party could warrant a very different characterization in a Section 1498(a) action against the government. Therefore, even assuming Section 285 applies, it would not be appropriate to determine what constitutes an "exceptional case" for the government in a Section 1498(a) action based on a wooden application of decisions describing "exceptional cases" for private parties under 35 U.S.C. § 285. For example, as described above, Title 35 is premised on the notion that absent appropriate authorization, a private party generally cannot use a patented invention and is subject to injunction for any such unauthorized use. Section 1498(a), on the other hand, is founded on the premise that, although the government is obliged to pay a patent holder reasonable and entire compensation for use of his or her patent, the government can never be denied such use. Thus, while the *Spindelfabrik* court found a private party's deliberate and infringing use of a patented invention to constitute "exceptional circumstances," the government's use of that same invention would be sanctioned by statute and could not be classified as inappropriate, much

less "exceptional." In this context, even assuming "exceptional circumstances" is a viable independent ground for awarding attorneys fees herein, any determination in this regard necessarily would require a case-by-case consideration of all of the facts. After reviewing all of the facts in the instant action, this court concludes that the circumstances herein are not "exceptional."

## IV.

As a final alternative argument, plaintiff contends that he qualifies for an award of fees and expenses under 28 U.S.C. § 2412(d)(1)(A), which mandates such an award to a prevailing party "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."

In assessing "substantial justification," the relevant standard is one of reasonableness both in law and in fact. A case is substantially justified if it is " 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988). The reasonableness of the government's position is evaluated on the totality of the circumstances, and the government has the burden to demonstrate that its position was reasonable. *Essex Electro Engineers, Inc. v. United States*, 757 F.2d 247, 252–54 (Fed.Cir.1985).[2]

Herein, to determine whether defendant's position was "substantially justified," the court must look at the positions defendant has taken on each of the main issues raised during this litigation, *i.e.*, (1) patent validity, (2) unauthorized use of plaintiff's patented invention, (3) compensation, and (4) the government's statute of limitations and laches defenses. After reviewing the legal and factual underpinnings of defendant's position in these areas, the court concludes that the government's position was "justified to a degree that could satisfy a reasonable person."

Defendant's assertion during litigation that plaintiff's patent was invalid and, in any event, did not cover the accused device is discussed at length in *De Graffenried I.* Defendant's arguments as described in that opinion, though ultimately unpersuasive, had respectable factual and legal support and it was reasonable for defendant to have presented them. Regarding compensation, defendant's argument was both reasonable and cogent, and as explained above, the court's ultimate damage award was far closer to defendant's calculations than to plaintiff's.

As to the statute of limitations and laches defenses, plaintiff contends that defendant was unreasonable in raising these defenses because plaintiff's failure to bring suit earlier resulted from defendant misrepresenting its utilization of plaintiff's patented technology. But as generally discussed above with respect to the availability of fees and expenses under Section 2412(b), these defenses were plausible and defendant should be deemed to have acted reasonably in presenting them to the court.

Thus, the totality of the circumstances of plaintiff's patent action against the government suggests that defendant's position was "justified ... in the main," and therefore, plaintiff should not receive fees and expenses under Section 2412(d)(1)(A).

### Conclusion

For the reasons set forth above, plaintiff is not entitled to fees and expenses under any of the statutory authorities upon which he relies. Therefore, plaintiff's application for fees and expenses is denied.

**IT IS SO ORDERED.**

---

**2.** *See, e.g., Bailey v. United States*, 721 F.2d 357, 360 (Fed.Cir.1983); *Ellis v. United States*, 711 F.2d 1571, 1575–76 (Fed.Cir.1983); *Broad Ave. Laundry & Tailoring v. United States*, 693 F.2d 1387, 1391 (Fed.Cir.1982).