**ZOLTEK CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 96–166C.**

United States Court of Federal Claims.

March 14, 2002.

---

Dean A. Monco and John S. Mortimer, Chicago, IL, for plaintiff. James F. Davis, Washington, DC, of counsel.

Gary L. Hausken, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant, with whom were Vito J. DiPietro, Director; and Robert D. McCallum, Jr., Assistant Attorney General.

## OPINION

DAMICH, Judge.

### I. Introduction

This action is before the Court on Defendant's Motion for Partial Summary Judgment pursuant to Rule 56 of the Court of Federal Claims (RCFC). Defendant contends that 28 U.S.C. § 1498(c) bars Plaintiff from receiving compensation for the use of methods claimed in U.S. Patent No. Re. 34,-162 ("the '162 Patent") in the manufacture of silicon carbide fiber sheet products used by

the F–22 fighter program because the claim arises in a foreign country. For the reasons stated herein, the Defendant's Motion for Partial Summary Judgment is STAYED pending additional briefing by the parties on the issues stated herein.

## II. Background

Zoltek Corporation (hereinafter "Plaintiff") is the owner of the '162 Patent. Plaintiff alleges that the process used by or for the United States Government (hereinafter "Defendant") to manufacture silicon carbide fiber mats[1] and prepregs[2] used in the F–22 fighter aircraft infringes the claims of the '162 Patent either directly or under the doctrine of equivalents. According to Plaintiff, the unauthorized use by Defendant of the processes claimed in the patent entitles it to compensation under 28 U.S.C. § 1498(a). According to 28 U.S.C. § 1498(a), an aggrieved party may recover monetary damages from the United States for the unlicensed manufacture or use of that party's patented invention. Section 1498(a) reads in relevant part:

> Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture .... For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States.

28 U.S.C. § 1498(a). According to 28 U.S.C. § 1498(c), an otherwise valid claim for damages under 28 U.S.C. § 1498(a) is barred where the "claim aris[es] in a foreign country."[3]

This case arose out of Defendant's alleged use of the invention claimed in the '162 Patent. Although originally focused on the development and production of the B–2 Stealth Bomber, the litigation now centers on the manufacture and production of the new F–22 fighter. The F–22 fighter is currently under development by the United States Government. Defendant has contracted with Lockheed Martin Corporation (hereinafter "Lockheed") to design and build the F–22 fighter. Lockheed has subcontracted with other companies to provide fiber sheet products for the F–22 fighter. Two fiber sheet products are at issue in the present action. The first product is a prepreg made from Nicalon fiber, which is a product of the Nippon Carbon Company (a Japanese company) and is distributed by COI Ceramics, Inc., in the United States. There is no evidence before the Court that indicates whether the Nicalon fibers are manufactured inside or outside of the United States. The second product is a silicon carbide fiber mat product made from Tyranno fibers. Although Defendant asserts that Tyranno fibers are manufactured exclusively in Japan by Ube Industries, this remains a genuine issue of material fact. Plaintiff has admitted, however, that all Tyranno fibers used in the mat product were manufactured outside of the United States. There is no evidence before the Court demonstrating the location of the processing of the Tyranno fibers into mat products.

This Motion for Partial Summary Judgment was brought by Defendant on July 5, 2001. Oral argument was held on December 13, 2001.

The issue before the Court is whether 28 U.S.C. § 1498(c) precludes recovery from the United States for the use of a patented pro-

---

1. A mat is a fibrous reinforcing material comprised of chopped or swirled filaments bound in order to maintain form. Mat products are typically available in blankets of various weights and sizes.

2. A prepreg, better known as a preimpregnated material, is a material typically used in the manufacture of high performance composites.

3. 28 U.S.C. § 1498(c) reads: "The provisions of this section shall not apply to any claim arising in a foreign country."

cess without a license where at least some elements of the process claim are practiced outside of the United States by a government contractor.

Plaintiff argues that the Court should first embrace the idea that section 1498(c) is irrelevant to this inquiry because the silicon carbide sheets manufactured by the accused process fall squarely within the plain terms of section 1498(a). Plaintiff contends that because the clause found in section 1498(a) is not expressly limited to domestic contractors or subcontractors, section 1498 must be interpreted to mean that if infringing activity committed in a foreign country falls within the boundaries of section 1498(a), then section 1498(c) does not apply. Alternatively, Plaintiff argues that Congress intended for section 1498 to apply to those forms of direct infringement committed abroad as defined in 35 U.S.C. § 271.[4] Plaintiff argues that construing the statute otherwise would result in Plaintiff having no available claim against Lockheed (the government contractor) because it would be barred by section 1498(a)[5] and no available claim against the United States because it would be barred by section 1498(c). Plaintiff asserts that such a result is against congressional intent that infringement liability should not be dependent upon the identity of an infringer, yet Plaintiff fails to identify where Congress expressed this intent.

Defendant argues that the Court should interpret the phrase "claim arising in a foreign country" to mean that if any part of the patented invention is practiced in a foreign country, the claim arises in that country. Defendant contends that there is no genuine issue of material fact as to whether Nicalon and Tyranno are manufactured in a foreign country. Thus, because each product is manufactured in a foreign country, any claim based on the manufacture of these products must "arise in a foreign country" and is barred by section 1498(c).

## III. Discussion

### A. Standard for Summary Judgment

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Jay v. Secretary, DHHS*, 998 F.2d 979 (Fed.Cir. 1993). The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. After adequate time for discovery and on motion, summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, where that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court must resolve any doubts about factual issues in favor of the nonmoving party, *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307 (Fed.Cir.1998), and draw all reasonable inferences in its favor. *See Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 773 (Fed.Cir.1995).

### B. Nicalon

Based on the facts before the Court, it is unknown whether Nicalon fibers (and the resultant mats produced from these fibers) have been manufactured outside of the United States. Due to the exclusion of Defendant's Exhibit 18, this Court does not have any evidence available to it regarding the location of the manufacture of Nicalon fibers

---

**4.** 35 U.S.C. § 271 is a statute that defines patent infringement between private parties. Significantly, section 271(g) makes it an infringement to import into the United States a product made from a process patented in the United States.

**5.** Plaintiff has no cause of action against Lockheed because the allegedly infringing activity is considered "use or manufacture for the United States" under section 1498(a). Section 1498(a) protects contractors or subcontractors from suit for patent infringement if the infringing act is committed "with the authorization or consent of the government ...." In these cases, "[t]he [patent] owner's remedy shall be by action against the United States ...." The parties agree that Lockheed cannot be sued under 35 U.S.C. § 271 for infringement of the '162 Patent.

for purposes of summary judgment.[6] Thus, it is not clear from the evidence before the Court where the claim arises with respect to Nicalon. Because a sufficient record is lacking, the crucial question is whether Plaintiff or Defendant will carry the burden of proving at trial that the fibers were or were not manufactured in a foreign country. If Plaintiff carries the burden of proof with respect to section 1498(c), then it is presently lacking an essential element of its case, and summary judgment would be appropriate if there has been adequate time for discovery. If Defendant carries the burden of proof, the lack of evidence in the record will be construed in favor of the non-moving party (Plaintiff), and summary judgment must be denied with respect to claims arising out of the manufacture of Nicalon fibers.

An examination of the language and construction of section 1498 as a whole indicates that section 1498(c) was intended as an affirmative defense for the government, rather than as an additional element for a plaintiff to prove in its case. Section 1498(a) clearly describes the circumstances in which the owner of a patent is entitled to sue the government for "reasonable and entire" compensation. 28 U.S.C. § 1498(a). More precisely, section 1498(a) fully sets out what a plaintiff must prove in the Court of Federal Claims in order to be compensated for the use or manufacture by the United States of its patented invention. Section 1498(c), on the other hand, provides that even where a plaintiff meets all of the requirements that establish a claim for compensation under 1498(a), the provisions allowing for the recovery of just and reasonable compensation "shall not apply" if it is demonstrated that the claim arises in a foreign country. Importantly, section 1498(c) is worded negatively. By indicating when section 1498(a) does not

apply, rather than indicating the instances where section 1498(a) does apply, Congress has signaled that section 1498(c) should be construed as an affirmative defense for the government rather than an essential element to a plaintiff's case under section 1498(a).[7] Had Congress wished to make the requirement that the claim not arise in a foreign country part of the plaintiff's burden, it could have chosen two alternatives to clearly indicate its intent. First, Congress could have phrased section 1498(c) as a positive requirement [e.g., "The provisions of this section shall apply only to claims arising in the United States."]. Second, Congress could have, in lieu of adding section 1498(c), placed the "[not] arising in a foreign country" requirement in the already existing section 1498(a) as an additional element necessary to establish a claim against the government. Either of these alternatives would have clearly indicated that the burden of proving at trial that the claim did not arise in a foreign country rested on the plaintiff. Thus, the Court agrees with Plaintiff that the government bears the burden of proof in demonstrating that the claim arises in a foreign country.

Because Defendant carries the burden of proving at trial that the claim arises in a foreign country, the lack of evidence in the record is construed in favor of Plaintiff. Section 1498(c) precludes recovery only in cases where the claim arises in a foreign country. Because there is no evidence in the record that establishes where Nicalon is manufactured, there is a genuine issue of material fact as to where the claim arose with respect to Nicalon. Thus, summary judgment with respect to the Nicalon fibers is inappropriate.

### C. Tyranno

The facts before the Court demonstrate that Tyranno chopped silicon carbide fibers

---

6. Defendant offered into evidence a facsimile from Mr. Ron Zipprich, Director of New Business & Technology for COI Ceramics, Inc., to show that Nicalon fibers have never been manufactured in the United States. The Court found that the letter was hearsay and did not fall under any hearsay exception. However, because the motion has been stayed, the Court invites the parties to submit additional evidence that may establish the absence of a genuine issue of material fact as to the location at which Nicalon fibers are manufactured.

7. The fact that the Court later in this opinion holds that "arising in a foreign country" in 1498(c) means the same thing as "within the United States" in 35 U.S.C. § 271 does not undercut the Court's reasoning with regard to the burden of proof. The burden of proof depends on the structure of section 1498 and the way that the limitation of section 1498(c) is worded. Two phrases may be worded differently and yet have the same meaning.

are manufactured outside of the United States. SJ Hr'g 75. The Tyranno chopped silicon carbide fibers do not of themselves constitute the "sheet products" claimed in the patented processes. Under this Court's adopted claim construction, an additional step of processing the Tyranno fibers into mats is required for them to become "sheet products" within the meaning of the '162 Patent. Claim Constr., at 11. The evidence before the Court does not show where this additional processing step occurs. Therefore, it is not established that the whole patented process is practiced outside the United States. Because the Court must view the evidence in the light most favorable to the non-movant (Plaintiff) in order for summary judgment to be appropriate regarding Tyranno fibers, the Court must find: (1) that section 1498(c) precludes governmental liability where all of the elements of the claims at issue are practiced in a foreign country; and (2) that section 1498(c) also precludes governmental liability where only some of the elements of the claims at issue are practiced in a foreign country.

■ This case presents an unusually difficult question of law and statutory interpretation. Strong arguments are available on either side of this issue. The starting point for statutory interpretation is the plain language of the statute. The language states that section 1498 shall not apply to "*claims* arising in a foreign country." [8] 28 U.S.C. § 1498(c) (emphasis added). The context of the entire statute indicates that "claim" means the entire legal claim against the United States. This is the sense of "claim" in the title, "United States Court of Federal *Claims.*" This is also the sense of "claim" in section 1498(a), where the statute precludes a "claim" being brought against the United States for activities occurring before July 1, 1918. Finally, "claim" is also used in section 1498(b), which deals with copyright infringement, where the word does not have the ambiguity that it has in the context of patent law, that is, a "claim" of a patent versus a "claim" against the United States. The second paragraph of section 1498(b) gives the government the authority to settle the (copyright) "claim." [9] Thus, "claim" in the patent context means an infringement claim. For patent infringement to occur, a patent claim must read on an accused device or method in its entirety, either literally, or under the doctrine of equivalents. Thus, for infringement to occur in a foreign country, all elements or processes that comprise infringement must take place in a foreign country. As a result, with respect to a process claim, if any part of the process is not practiced in a foreign country, it would seem that the claim cannot arise in a foreign country.

Some ambiguity still remains, however, because of the word "arising." "Arising" implies a process, something which is not fully completed. This is the function, after all, of the active participle. Pursuing this logic, the Court could conclude that if the steps that constitute infringement *begin* in a foreign country and are *completed* in the United States, then the claim has "arisen" in a foreign country. Unfortunately, there are no cases defining "arising," and the term does not appear elsewhere in the statute.

Because the phrase, "arising in a foreign country" is ambiguous, the Court turns to legislative history, especially since the cases cited by Plaintiff [10] and

**8.** This provision of the law has not been altered since its passage in 1960.

**9.** Section 1498(b) reads in relevant part: "That before such action against the United States has been instituted ... the [agency head] is authorized to enter into an agreement with the copyright owner ... to settle the claim administratively out of available appropriations."

**10.** Plaintiff extensively cites *Hughes Aircraft Co. v. Messerschmitt–Boelkow–Blohm, GmbH,* 437 F.Supp. 75 (N.D.Fla.1977), arguing that the case demonstrates that where the infringing device is manufactured outside the United States and the government plays a very limited role in its development, the government will still be subject to suit under section 1498. Plaintiff notes that a section 1498(c) defense was never raised either at trial or on appeal to the Fifth Circuit. Contrary to Plaintiff's contention, the issue in the case was whether or not the patented product was used *by the United States Government.* The allegedly infringing article was a control system on a spacecraft used in the Helios space project developed and managed primarily in West Germany. The United States Government played a somewhat limited role in its development. The

Defendant [11] can be easily distinguished.

## 1. Statutory Authority and Legislative History

■ The legislative history of section 1498 is best understood for the purposes of this case in comparison with 35 U.S.C. § 271 (defining infringement between private parties), since the general purpose of section 1498 was to provide a cause of action against the government for patent and copyright infringement that reflected causes of action against private parties.[12]

The law that later became 28 U.S.C. § 1498 was originally adopted in 1910 for the purpose of providing patent owners with a remedy against the Federal Government for unauthorized use of their patented invention. Act of June 25, 1910, ch. 423, 36 Stat. 851. There was no provision regarding claims arising in a foreign country in the law as originally passed.

In 1952, Congress codified much of the common law that had developed in the patent field, passing the Patent Act of 1952, Pub.L. No. 82–593, 66 Stat. 792 (codified as amended at 35 U.S.C. §§ 1 et seq.). Infringement was defined at that time as making or using or selling an invention within the United States without a license. 35 U.S.C. § 271(a) (1952). Because the language of the statute limited infringement to *within the United States,*

there was no need to add language regarding non-infringement for use outside of the United States.

Section 1498(c) was adopted by Congress in 1960.[13] Congress chose to adopt section 1498(c) after the State Department opined that 28 U.S.C. § 1498 could be interpreted by the courts as subjecting the United States to suit for infringement committed abroad. Section 271, on the other hand, specifically limited infringement liability to acts committed within the United States. Because section 271 specifically limited infringement to acts occurring "within the United States," and section 1498 did not provide a similar limitation, the State Department, and Congress as a result, feared that the courts might extend patent infringement liability against the government beyond the scope to which private parties were subject at that time. Thus, section 1498(c) was proposed and adopted as an amendment to the bill to "remove the possibility of its being interpreted as applying to acts of infringement in foreign countries." S.Rep. No. 86–1877, at 6 (1960), *reprinted in* 1960 U.S.C.C.A.N. 3450. Thus, it is clear that the language of section 1498(c) was intended by Congress to have the same meaning as the language "within

---

Fifth Circuit, in conferring exclusive jurisdiction to the Court of Claims under 28 U.S.C. § 1498(a), held that the project as a whole was a joint effort between the two governments for mutual benefit. *Hughes Aircraft Co. v. Messerschmitt–Boelkow–Blohm, GmbH,* 625 F.2d 580, 584 (5th Cir.1980). The Helios spacecraft was launched from the United States and was used in its entirety within the United States. This use within the United States clearly constituted a claim arising in the United States, making section 1498(c) inapplicable to the facts of the case. As a result, any question regarding the location of the spacecraft's manufacture became moot. In the case at bar, a different issue is being considered. There is uncertainty as to where the alleged infringement of Plaintiff's patent occurred. Part of the allegedly infringing process was practiced in a foreign country. Under section 1498(c), the question becomes whether the patented process was used *in* the United States rather than *by (or for)* the United States.

**11.** Defendant relies chiefly on *Leesona Corp. v. United States,* 220 Ct.Cl. 234, 599 F.2d 958 (1979), where the court held that "a complete congruence between section 1498 and Title 35

would grant plaintiff recovery in excess of the just compensation required by the Fifth Amendment, and in excess of the reasonable and entire compensation contemplated by Congress with the passage of section 1498." *Id.* at 251–52. *Leesona,* however, was a case in which the court was overruling a trial judge's holding that treble damages (as provided for in Title 35) were available to plaintiffs in cases arising under section 1498. Thus, *Leesona* stands merely for the proposition that the damages provisions of Title 35 do not apply in patent cases against the government.

**12.** It may be argued that, from the beginning, section 1498 did not match the scope of infringement liability as to private parties, as selling was not included in the statute that eventually became section 1498. Selling was an infringing act in 1910, when the law was originally passed. It may have been, however, that Congress could not envision the government selling a patented invention in 1910, and thus thought it unnecessary to include it in the statute.

**13.** "The provisions of this section shall not apply to any claim arising in a foreign country." 28 U.S.C. § 1498(c).

the United States" as found in 35 U.S.C. § 271(a).

Therefore, in order to ascertain the meaning of "claim arising in a foreign country" the Court must determine the meaning of "within the United States" as written in section 271. There is little case law with respect to the exact meaning of the phrase "within the United States." However, it appears that when section 1498(c) was adopted in 1960, the language of 35 U.S.C. § 271 did not prevent a prospective infringer from moving merely one step of a patented process to a foreign country, thereby avoiding infringement.[14]

In 1960, at the time section 1498(c) was adopted, if a private party practiced each step of a patented process within the borders of the United States, infringement liability would result under 35 U.S.C. § 271(a). Similarly, if the Federal Government practiced each step of a patented process within the borders of the United States, liability would arise under 28 U.S.C. § 1498. Prior to the adoption of section 1498(c), according to the little case law found on point, if a private party practiced even one step of a patented process outside of the United States, it avoided infringement liability, as the patent statute was limited to acts committed *within* the United States. 35 U.S.C. § 271(a) (1952); *See Cold Metal Process Co. v. United Eng'g and Foundry Co.*, 132 F.Supp. 597 (W.D.Pa. 1955), *aff'd*, 235 F.2d 224 (3d Cir.1956) (finding no infringement because one component of a patented product was made outside of the United States). Moreover, the Court, if asked to interpret the meaning of "within the United States" in the absence of the limited case law available, would find similarly. Infringement only occurs when all steps in a process patent are practiced. *Canton Bio–Medical, Inc. v. Integrated Liner Techs.*, 216 F.3d 1367, 1370 (Fed.Cir.2000). If infringement must occur "within the United States" as required by section 271, then it follows that all the steps that comprise the infringement must also occur within the United States. Thus, at the time that section

1498(c) was enacted, because a private citizen could avoid infringing a patent by practicing one limitation in a foreign country, section 1498(c) was also intended to exempt the Federal Government from liability where any part of the invention was practiced outside of the United States.

### 2. Does Section 1498 Cover All Direct Infringement?

■ Plaintiff urges the Court to interpret section 1498 to mean that the government may be sued for any act which would constitute direct infringement under 35 U.S.C. § 271. If the legislative history were to show a clear congressional intent that section 1498 was intended to apply to all forms of direct infringement, section 1498(c) would not preclude recovery from the government for the use of the methods covered by the '162 Patent.

Beginning with the Process Patent Amendment Act of 1988, Congress has amended Title 35, section 271 to expand the definition of what constitutes direct infringement between private parties. This expansion has, for example, provided causes of action against those who import patented products, or products made by a patented process. *See* 35 U.S.C. § 271(a), (g). In view of the objectives and policies underlying section 1498, it would seem reasonable to conclude that Congress intended the scope of section 1498 to expand with the definition of direct infringement. In fact, the Federal Circuit appears to have supported this view in *Motorola v. United States*, 729 F.2d 765 (Fed.Cir.1984), where it stated that the government may be sued under section 1498 for "any direct infringement of a patent . . . ." *Motorola*, 729 F.2d at 768 n. 3. However, this statement was made prior to 1988, when Congress amended 35 U.S.C. § 271 to expand the definition of what constitutes infringement. So, while this statement clearly stands for the proposition that section 1498 applies to all direct infringement as it was defined in 1984 (which was identical to direct infringement as defined when section 1498(c) was adopted), it

---

**14.** 35 U.S.C. § 271(a) (1952) was the only clause defining direct infringement at that time. It read in relevant part: "(a) Except as otherwise provided in this title, whoever without authority makes, uses, or sells any patented invention, *within the United States* during the term of the patent therefor, infringes the patent." (Emphasis added.)

does not support the notion that section 1498 applies to any direct infringement under the current patent laws.

Direct infringement of a patent in 1960 was defined in 35 U.S.C. § 271(a) as making, using, or *selling* any patented invention, *within* the United States during the term of the patent. Section 1498(a), as adopted, applied to cases where the government manufactured[15] or used a patented invention. Section 1498(a) did not refer in any way to recovery for the sale of a patented invention by the Federal Government. At that time, though, the sale of a patented invention was a form of direct infringement. This exclusion of "selling" from section 1498 can be viewed in two ways. On one hand, absent clear evidence in the legislative history that Congress wished otherwise, it could be presumed that not including the act of selling in section 1498(a) was a purposeful exclusion. Because selling a patented invention was a form of direct infringement at the time section 1498 was adopted, and because section 1498 did not hold the Federal Government liable for selling a patented product, it would be likely that section 1498 was not intended to cover all acts that would constitute direct infringement if committed by a private party. On the other hand, one might reasonably conclude that when Congress passed the predecessor to section 1498 in 1910, it did not contemplate any situation where the Federal Government would sell a patented product rather than manufacture it or use it and thus saw no need to provide consent to be sued in such a situation. However, this interpretation only would indicate that Congress intended that section 1498 would apply to any direct infringement as defined in 1910. It would not indicate that section 1498 should apply to direct infringement as it is defined today after the subsequent amendments to section 271.

Because nothing in the legislative history indicates that Congress intended for the meaning and effect of section 1498 to change

in congruence with changes in 35 U.S.C. § 271, the Court is constrained to hold that section 1498 does not apply to all forms of direct infringement as currently defined in 35 U.S.C. § 271.

### 3. A Legislative Gap Exists

Congress has on occasion expressed a desire that patent infringement not be dependent on the identity of the infringer. In 1990, Congress passed the Patent and Plant Variety Protection Remedy Clarification Act[16] that amended the patent code to clearly state Congress's intention to abrogate state sovereign immunity as a defense to patent infringement lawsuits. This act was precipitated by the Supreme Court decision in *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985), which held that congressional intent to abrogate state sovereign immunity must be explicitly and unambiguously stated in the statute itself. *Atascadero,* 473 U.S. at 241, 105 S.Ct. 3142. *See also* S.Rep. No. 102–280, at 5 (1992), *reprinted in* 1992 U.S.C.C.A.N. 3086, 3091. In *Chew v. Cal.,* 893 F.2d 331 (Fed.Cir.1990), the Federal Circuit affirmed the dismissal of a patent infringement suit against the state of California. *Chew,* 893 F.2d at 336. Following *Atascadero,* the court stated that congressional intent to subject states to patent suit in Federal court must be explicitly stated in the patent infringement statute. *Id.* at 334. In response to this decision, Congress proposed an amendment to the United States Code that explicitly provided for suit against a state government for the infringement of a patent.

The Senate committee report first noted that the "Federal Government has already consented to suit in Federal court for patent infringement [under 28 U.S.C. § 1498]." The report further stated that "just as there is no distinction between a State versus a private school, there is no distinction between the Federal Government and a State government ...." S.Rep. No. 102–280, at 9 (1992), *reprinted in* 1992 U.S.C.C.A.N. 3086,

---

**15.** "Manufacture" has been equated to "make" in subsequent cases.

**16.** At least part of this act (the abrogation of the States' 11th Amendment immunity) was declared unconstitutional by the Supreme Court in *College*

*Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Board,* 527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999). Because the Court is only looking at the purpose behind passing the act, however, that finding does not affect our analysis in this case.

3095. Moreover, in introducing the bill that eventually was passed into law, Senator De-Concini declared that "Congress never intended for the rights of patent owners to be dependent upon the identity of the infringer." 136 Cong. Rec. 31410 (1990). This legislative history demonstrates that Congress intended that states be subject to patent liability just as private citizens. The legislative history of section 271 further demonstrates that Congress saw no distinction between the Federal Government and the State government in this respect. Therefore, the Court might presume that Congress intended the scope of patent infringement liability for the Federal Government to be similar to that of a private citizen. Nevertheless, in construing the meaning of section 1498(c), congressional intent indicated by the legislative history of section 271 cannot supersede the plain language of section 1498. Congress may very well have intended section 1498 to apply to the additional infringing acts added since 1988 to 35 U.S.C. § 271, but it did not legislate accordingly.

As the patent statute has been expanded to provide additional protection to patent owners from infringing parties, Congress has failed to update section 1498 to make these additional protections applicable against the Federal Government. For example, when Congress passed the Process Patent Amendments Act of 1988, Pub.L. No. 100–418, 102 Stat. 1563 (1988), expanding infringement to include the importation of products made by a process patented in the United States (35 U.S.C. § 271(g)), it chose not to amend the language of section 1498 to specifically cover this form of infringement that clearly arises at least in part in a foreign country. Section 1498 was and is still limited to manufacture or use of a patented invention when the claim does not arise in a foreign country.

■ In *Rotec Indus. v. Mitsubishi Corp.*, 215 F.3d 1246 (Fed.Cir.2000), the Federal Circuit held that "[t]he court may not read an amendment to one section of a statute as an amendment to an entirely different section of the statute in the absence of any statutory justification." *Rotec Indus.*, 215 F.3d at 1258. The court further held that "[t]here is no general reason, however, for

the court to play the part of surrogate legislature." *Id.* "This Court is empowered to rewrite neither statutes nor regulations, however unwise, nor does it have the information base nor expertise to do so effectively." *Newport News Shipbuilding and Dry Dock Co. v. Garrett,* 6 F.3d 1547, 1558 (Fed.Cir. 1993). While the court at times may have a role to play in filling a small legislative gap, Federal Circuit precedent indicates that in cases such as the one before this Court, where Congress has amended one statute and failed to amend another section of the statute or a related statute, the court must presume that Congress, absent a clear indication to the contrary, was cognizant of its choice and the potential gap created in the law.

### 4. Fifth Amendment and Sovereign Immunity

Under the principles of sovereign immunity, the government must give its consent in order to be sued. Without an express waiver of sovereign immunity, this Court lacks subject matter jurisdiction to hear the case. Sovereign immunity is "strictly construed, in terms of its scope, in favor of the sovereign." *Dep't of the Army v. Blue Fox, Inc.,* 525 U.S. 255, 261, 119 S.Ct. 687, 142 L.Ed.2d 718 (1999). "In construing a statute waiving the sovereign immunity of the United States, great care must be taken not to expand liability beyond that which was explicitly consented to by Congress." *Fidelity Constr. Co. v. United States,* 700 F.2d 1379, 1387 (Fed. Cir.1983). These clearly stated principles add further support to the interpretation of section 1498 announced herein.

■ However, the Federal Circuit has repeatedly stated that patent infringement by the government constitutes a government taking under an eminent domain theory. *See Hughes Aircraft Co. v. United States,* 86 F.3d 1566, 1572 (Fed.Cir.1996); *Leesona Corp.,* 220 Ct.Cl. at 252, 599 F.2d 958. *Contra De Graffenried v. United States,* 29 Fed. Cl. 384, 386 (1993); *Brunswick Corp. v. United States,* 36 Fed.Cl. 204, 207 (1996) (holding that the Federal Circuit statements that patent infringement by the government was a government taking were only dicta and that

actions under section 1498 were not eminent domain proceedings). The Supreme Court has repeatedly held that the Constitution requires that the government provide a remedy for all Fifth Amendment takings. *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 316, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987); *Kirby Forest Indus. Inc. v. United States*, 467 U.S. 1, 5, 104 S.Ct. 2187, 81 L.Ed.2d 1 (1984); *Jacobs v. United States*, 290 U.S. 13, 16, 54 S.Ct. 26, 78 L.Ed. 142 (1933). Following these holdings, the direct infringement of a patent by the government may constitute an unlawful taking because the patent confers upon its owner the right to exclude others from making, using, selling, or importing the patented invention. Where the government infringes that right to exclude, interpreting section 1498(c) to bar such a claim might violate the Fifth Amendment.

## IV. Conclusion

Because the parties have not discussed the immediately preceding issue in their briefs, the Court believes that the proper resolution of this summary judgment motion requires that the parties be heard on it. The Court therefore orders supplemental briefing on the following issues:

1. Does the alleged patent infringement in this case constitute a Fifth Amendment taking?

2. If the alleged patent infringement does indeed constitute a Fifth Amendment taking, does the Court's interpretation of 28 U.S.C. § 1498(c) violate the Fifth Amendment?

The Court also invites the parties to submit additional evidence pertaining to the location of manufacture of Nicalon fibers. The Court further directs that a status report be filed within 10 days of this opinion providing three mutually agreeable dates to conduct a status conference.