**CANTON BIO–MEDICAL, INC.,
Plaintiff–Appellant,**

v.

**INTEGRATED LINER TECHNOLO-
GIES, INC., Defendant–Appellee.**

No. 98–1568.

United States Court of Appeals,
Federal Circuit.

June 30, 2000.

Edward V. Filardi, White & Chase, of New York, NY, argued for plaintiff-appellant. Of counsel was John Scheibeler.

James R. Muldoon, Hancock & Estabrook, LLP, of Syracuse, NY, argued for defendant-appellee.

Before NEWMAN, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and RADER, Circuit Judge.

PAULINE NEWMAN, Circuit Judge.

Canton Bio–Medical, Inc. ("Canton") appeals the decision of the United States District Court for the Northern District of New York,[1] granting the motion of Integrated Liner Technologies, Inc. ("ILT") for summary judgment of non-infringement of Canton's United States Patent No. 4,499,148 under the doctrine of equivalents. The judgment is affirmed.

### The Patented Invention

Both ILT and Canton manufacture septa, which are small disks used as closures for liquid-containing vessels. These septa have perforation and self-sealing properties whereby a needle may be inserted and withdrawn from the vessels without significant contamination or fluid loss. The septa made by ILT and Canton are formed from plastic laminations of a layer of an elastomer, such as a silicone rubber, and one or more layers of a polyolefin. The

---

1. *Canton Bio–Medical, Inc. v. Integrated Liner Technologies, Inc.,* 19 F.Supp.2d 22 (N.D.N.Y. 1998).

'148 patent is directed to the process by which these materials, which are generally inert and difficult to bond, are laminated to form septa having the desired properties.

The '148 patent describes and claims a four-step process wherein the polyolefin surface is treated with a corona discharge, primed with a specified primer solution, bonded to an uncured elastomer, and cured by application of heat while applying pressure to the laminate. By this process a firm bond or "chemical bridge" is formed between the polyolefin and the elastomer. Claim 1 is the only claim in suit:

1. A method of chemically bonding elastomeric materials to chemically inert polyolefins, the method comprising:

[a] exposing a chemically inert polyolefin surface to a corona discharge treatment,

[b] applying to the corona discharge treated surface of the polyolefin a primer solution of ethyl silicate, ethyl orthosilicate and tetra butyl titanate in an organic solvent,

[c] placing the treated and primed surface of polyolefin in contact with the surface of an uncured elastomeric compound of molecular weight above 61,000 with a minimum elongation modulus of fifty percent; and,

[d] applying heat to the composite material to cure the elastomeric compound while pressing the polyolefin elastomeric compound article firmly together, whereby upon curing of the elastomeric material the polyolefin will be firmly and securely bonded thereto.

In the accused ILT process the polyolefin surface is also treated with a corona discharge, primed, and laminated to an elastomer by treating with heat and application of pressure. ILT states that the patented and the accused processes differ in two ways. First, ILT contends that it uses a different chemical primer solution from that of step [b]. Second, ILT argues that the bonded elastomeric compound in ILT's process is not "uncured" as stated in step [c] before the treatment with heat and pressure in accordance with step [d].

Because of the different chemicals used in the step [b] primer solution, Canton agreed that ILT's process does not literally infringe claim 1. The district court held by summary judgment that there was no infringement under the doctrine of equivalents, based primarily on prosecution history estoppel. We affirm.

### The Doctrine of Equivalents

■ The determination of equivalency *vel non* is a question of fact. *See Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1218, 36 USPQ2d 1225, 1229–30 (Fed.Cir.1995). Thus summary judgment may be granted when no material fact is in dispute, or when no reasonable trier of fact could find facts whereby the nonmoving party could prevail, even when all justifiable factual inferences are drawn in favor of the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The district court's grant of summary judgment receives plenary review on appeal, *see EMI Group N. Am., Inc. v. Intel Corp.*, 157 F.3d 887, 891, 48 USPQ2d 1181, 1184 (Fed.Cir.1998), as does the court's ruling on the issue of prosecution history estoppel.

■ Processes are equivalent, in terms of the law of patent infringement, when there is no substantial difference between the patented process and the accused process. *See Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39–40, 117 S.Ct. 1040, 137 L.Ed.2d 146, 41 USPQ2d 1865, 1875 (1997) (also discussing the "function, way, result" criteria for determining equivalency, but recognizing that this formula may provide a "poor

framework" for analyzing chemical processes). Infringement of process inventions is subject to the "all-elements rule" whereby each of the claimed steps of a patented process must be performed in an infringing process, literally or by an equivalent of that step, with due attention to the role of each step in the context of the patented invention. *See id.* at 29, 40, 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146, 41 USPQ2d at 1871, 1875. However, even when technological equivalency is present, the patentee is estopped from enforcing the patent against an equivalent process if the inventor surrendered, during prosecution of the patent application, claim scope which included the now-asserted element or its equivalent. *See id.* at 30–33, 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146, 41 USPQ2d at 1871–72.

## A

Canton's claimed step [b] requires the application, to a corona discharge treated polyolefin surface, of a primer solution containing ethyl silicate, ethyl orthosilicate, and tetrabutyl titanate. The accused ILT process also applies a primer to a corona discharge treated polyolefin surface. However, the ILT primer solution differs from Canton's in that it is a solution of the compound N–(2–aminoethyl)–3–aminopropyltrimethoxysilane, of the formula $(CH_3O)_3Si(CH_2)_3NHCH_2CH_2NH_2$. Canton states that ILT's primer solution containing this single molecule is the chemical equivalent of Canton's primer solution containing three molecules, based on insubstantial differences in the primers' chemical and physical properties and functions, including the identity or equivalency of their chemical functional groups, their recognized interchangeability as bonding agents, and their identical property of catalytic bonding when used as a primer for sealing silicone elastomer to corona discharge treated polyolefin. Canton argues that all of these considerations, taken together, provide factual support of equivalency sufficient to raise questions of material fact as to equivalency and to defeat the grant of adverse summary judgment.

Canton's expert submission showed that the ILT primer compound is a known silane coupling agent, with known use in bonding silicone elastomers to various substrates. Explaining the mechanism of the chemical interchangeability, Canton's expert testified that the methoxysilane portion of ILT's compound functions in the same way as the ethyl silicate and ethyl orthosilicate of the claimed primer, in that the alkoxy groups of these molecules react with the hydroxyl groups on the corona discharge treated resin surface to create a chemical bridge of covalent bonds. He stated that this chemical behavior was well known for these compounds.

Canton's expert also stated that the diamino portion of the ILT compound functions in the same way as the tetrabutyl titanate of the Canton composition, in that both serve to catalyze the coupling reaction. He stated that this catalytic behavior was also well known. He explained that the only difference is that ILT's primer contains the catalyst and coupling functions within a single molecule, while Canton's primer uses three molecules to perform these same functions. The expert concluded, as one skilled in the relevant field, that the difference is "insubstantial."

No contrary evidence was presented by ILT, although ILT now argues that the reaction mechanisms are different and that the diamine group of the ILT compound is involved in the chemical bonding and is not simply a catalyst. ILT concedes interchangeability of the primer solutions, but also argues that they are not equivalent as a matter of law, citing the "all-elements rule." Additionally, ILT argues that the primers are not equivalent in fact because of their differences in chemical structure.

Finally, ILT raises the issue of estoppel, and states that it is practicing the prior art.

## B

The district court ruled that prosecution history estoppel bars liability under the doctrine of equivalents. ILT points out that its primer compound was included in a prior art reference that Canton distinguished in order to overcome the examiner's objections to patentability of its process.

During prosecution of the '148 patent application the examiner rejected all of the claims of Canton's application on the ground of obviousness, citing several reference patents that described alkoxysilane primers for bonding silicone elastomers to various substrates, *viz.* U.S. Patent No. 3,667,993 (Stevenson), U.S. Patent No. 3,794,556 (Young), U.S. Patent No. 2,976,-185 (McBride), U .S. Patent No. 3,632,386 (Hurst), and U.S. Patent No. 4,332,844 (Hamada). The Stevenson patent shows primer compositions containing various silicon compounds used in bonding silicone rubbers to pretreated substrates. The Young patent shows primers including ethyl silicates and tetrabutyl titanate, for adhering silicone elastomers to substrates such as epoxy resins and polyurethanes. McBride describes the bonding of polyolefins to silicones using a silicone-type primer to improve adhesion. Hurst shows the corona discharge treatment of elastomers or polyolefins to increase adhesion, and the use of a primer to facilitate bonding of elastomer to polyolefin. Hamada describes two- and three-component primers for bonding silicone elastomers to various substrates, using various combinations of silicates, organotitanates, and organohydrogen silicon compounds. Among the specific compounds named by Hamada are two of the components of Canton's three-component primer (the ethyl silicate and tetrabutyl titanate), as well as the specific trimethyoxyaminosilane used by ILT.

In response to the examiner's rejection Canton argued that its invention was a "particular primer solution," distinguished by its use of these three specific components from the extensive cited prior art that included the ILT primer compound. In consideration of this argument, the examiner withdrew the rejection. Canton is thus estopped from asserting equivalency of the specific primers in the cited references. Although Canton now argues that its invention is the combination of process steps, and not solely the specific primer claimed in step [b], the prosecution record shows that patentability was premised in significant part on this specific primer and its distinction from the other primers described in the cited references.

Canton also argues that it did not amend its claims as to the primer. However, amendment is not essential when argument is made, and relied on, to distinguish the claimed subject matter from the prior art. *See, e.g., Wang Laboratories, Inc. v. Mitsubishi Elec. America, Inc.,* 103 F.3d 1571, 1578, 41 USPQ2d 1263, 1269 (Fed. Cir.1997) (arguments made to distinguish prior art give rise to estoppel). Canton is estopped from now reaching ILT's prior art primer under the doctrine of equivalents. On this ground, the district court's judgment is affirmed.

## C

In view of our affirmance of the judgment of non-infringement based on prosecution history estoppel, we do not reach the other questions of equivalency. Nor do we reach Canton's objection to the district court's denial of the discovery requested under Fed.R.Civ.P. 56(f), for the discovery was unrelated to the dispositive issue of the prosecution history.

*AFFIRMED*