**CAT TECH INC., Plaintiff,**

v.

**TUBEMASTER, INC., Defendant.**

**Civil Action No. H–05–3050.**

United States District Court,
S.D. Texas,
Houston Division.

May 22, 2007.

Barden Todd Patterson, David Michael Haugen, Henry Mark Pogorzelski, Patterson & Sheridan, LLP, Craig V. Depew, Clark Depew et al, Houston, TX, for Plaintiff.

Dennis D. Murrell, Middleton Reutlinger, Louisville, KY, Edward W. Goldstein, Goldstein Faucett & Preberg LLP, Houston, TX, for Defendant.

## MEMORANDUM AND ORDER

KEITH P. ELLISON, District Judge.

Pending before the Court are Plaintiffs and Defendant's cross-motions for partial summary judgment (Doc. No. 57, 67). Defendant seeks a declaratory judgment that none of its four basic configurations of reactor loading devices, when used to load catalyst, falls within the claims of Plaintiff's patent. Plaintiff, on the other hand, seeks a declaratory judgment that one of Defendant's configurations constitutes infringement. For the reasons set forth below, Defendant's motion is **GRANTED** and Plaintiff's motion is **DENIED**.

## I. BACKGROUND

Plaintiff Cat Tech, Inc. ("Cat Tech") owns U.S. Patent No. 6,905,660 ("the '660 patent") (filed Mar. 29, 2002) (issued June 14, 2005). The '660 patent describes a method for loading catalyst particles into the tubes of multi-tube chemical reactors. Multi-tube reactors are used by chemical manufacturers to produce various chemical products. The reactors typically contain thousands of long vertical tubes into which solid catalyst particles are loaded. Then, when gaseous reactants are released into the tubes and come into contact with the catalysts, the reactants undergo chemical reactions and become the desired chemical products.

It is important that the catalyst particles be loaded into the reactor tubes evenly and consistently in order to prevent several particles from wedging together, or "bridging." When bridging occurs, empty spaces accrue below the wedged particles in the reactor tubes. This leads to a variation in density among the tubes which can affect the chemical reactions and reduce the overall efficiency of the operation. The '660 patent introduces a method of loading reactor tubes that prevents bridging and that can be reconfigured to load reactors with varying sizes of tubes.

Cat Tech claims that TubeMaster is employing a method of loading multi-tube chemical reactors that infringes independent claims 3 and 4, as well as dependent

claims 5, 6, and 7, of the '660 patent.[1] It has sued TubeMaster for infringement and is seeking a declaratory judgment that TubeMaster's use of its OLE™ loading devices infringes the '660 patent. TubeMaster has counterclaimed, seeking a declaratory judgment that it has not infringed the '660 patent as well as a declaratory judgment that the '660 patent is invalid. TubeMaster has also pled a number of affirmative defense to Cat Tech's infringement allegations, including the unenforceability of the '660 patent.

This Court held a *Markman* hearing and issued an order construing the claims of the '660 patent. The parties have now filed cross-motions for partial summary judgment, Cat Tech seeking a declaratory judgment that the '660 patent was infringed by TubeMaster's use of the OLE™

1. Claims 3–7 of the '660 patent are set forth below, with the disputed claim terms italicized and the Court's construction of those terms in brackets:

3. *A method for loading solid particles into a multi-tube reactor, comprising:*
   a) positioning a plurality of discrete plates *on top of* [**above**] an upper tube-sheet of the multi-tube reactor, whereby the plates rest on and *substantially cover* [**cover to a fairly large degree**] at least a portion of the upper tube-sheet and provide *a spacing* [**gap**] between adjacent plates having a width not greater than the smallest dimension of a single particle to be loaded into the multi-tube reactor, the *spacing* [**gap**] for collecting dust and partial particles, wherein each plate comprises: an aperture that corresponds to a corresponding *reactor tube and has a diameter* not greater than 95% of the inner diameter of the corresponding reactor tube and not smaller than 1.1 times the greatest dimension of a single particle to be loaded into the corresponding reactor tube; and *means for holding the aperture in correspondence with the corresponding reactor tube* [**an insert, such as a spike, a pipe, or a half-pipe or equivalent structure, that is either individual to each hole or common to the entire device, for holding the aperture in correspondence with the corresponding reactor tube**];
   b) *pouring the particles over at least a portion of the plurality of plates covering the* tube-sheet;
   c) sweeping the particles through the apertures in the plates into the corresponding reactor tubes, whereby the particles fill the reactor tubes in a uniform manner and bridging is avoided;
   d) removing residual particles and any dust remaining on the plates and in the *spacing* [**gap**] between adjacent plates; and
   e) removing the plurality of plates.

4. A method for loading solid particles into a multi-tube reactor, comprising:
   a) positioning a plurality of discrete plates *on top of* [**above**] an upper tube-sheet of the multi-tube reactor, whereby the plates *substantially cover* [**cover to a fairly large degree**] at least a portion of the upper tube-sheet and each plate has a shape that provides a *spacing* [**gap**] between adjacent plates having a width not greater than the smallest dimension of a single particle to be loaded into the multi-tube reactor, the *spacing* [**gap**] for collecting dust and partial particles;
   b) pouring the particles over at least a portion of the plurality of plates covering the tube-sheet;
   c) sweeping the particles through apertures in the plates into *reactor tubes* of the multi-tube reactor, whereby a size of the apertures is selected for filling the reactor rubes with the particles in a uniform manner and avoiding bridging;
   d) removing residual particles and any dust remaining on the plates and in the *spacing* [**gap**] between adjacent plates; and
   e) removing the plurality of plates.

5. The method of claim 4, wherein the position the plurality of plates comprises inserting *fixing means* [**an insert, such as a spike, a pipe, or a half-pipe or equivalent structure, that is either individual to each hole or common to the entire device, for aligning the aperture in correspondence with the corresponding reactor tube**] of the plates into a top of reactor tubes of the multi-tube reactor to provide for alignment of apertures in the plates with corresponding reactor tubes.

6. The method of claim 4, wherein the sweeping the particles is performed mechanically.

7. The method of claim 4, wherein the sweeping the particles is performed manually.

loading devices, and TubeMaster seeking a declaratory judgment that its method of loading catalyst with any of the four device configurations it has developed does not infringe the '660 patent.

## II. LEGAL STANDARDS

### A. Summary Judgment

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. *See* Fed.R.Civ.P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotation marks omitted). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could enter a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Id.* at 255, 106 S.Ct. 2505.

### B. Patent Infringement

■ A determination of patent infringement entails a two-step analysis. *EMI Group N. Am., Inc. v. Intel Corp.*, 157 F.3d 887, 891 (Fed.Cir.1998) (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed.Cir.1995) (en banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996)). First, a court must construe the patent claims as a matter of law. *Id.* Second, the construed claims must be compared to the accused device or method; this is a question of fact. *Id.* An accused method infringes a patented method only if all of the steps claimed in the patent are performed in the accused process, either literally or by an equivalent step. *Canton Bio–Medical, Inc. v. Integrated Liner Techs., Inc.*, 216 F.3d 1367, 1370 (Fed.Cir.2000).

## III. ANALYSIS

### A. Subject Matter Jurisdiction

TubeMaster has developed four configurations of loading tubes that could infringe on the '660 patent. (Def.'s Mot. Partial Summ. J. Ex. B1–B4 (hereinafter "Configuration 1," "Configuration 2," "Configuration 3," and "Configuration 4").) The only configuration that TubeMaster has ever commercially sold is Configuration 3. TubeMaster is seeking a declaratory judgment that none of the four configurations infringe on the '660 patent, but Cat Tech argues that this Court does not have subject matter jurisdiction to consider the possible infringement of Configurations 1, 2, and 4.

■ In order for a court to have subject matter jurisdiction over a declaratory judgment action in the patent context, a plaintiff "must establish both (1) a reasonable apprehension that it will face a patent infringement suit if it commences or continues the activity at issue, and (2) present activity by the declaratory plaintiff that could constitute infringement, or concrete steps taken by the plaintiff with the intent to conduct such activity." *Microchip Technology, Inc. v. The Chamberlain Group, Inc.*, 441 F.3d 936, 942 (Fed.Cir. 2006). Cat Tech and TubeMaster agree that the first prong of this test is met, but the parties dispute under the second prong whether TubeMaster has taken concrete steps to utilize Configurations 1, 2, and 4.

The Court is of the opinion that TubeMaster has taken sufficient concrete steps

to conduct loading activity with Configurations 1, 2, and 4. It has developed the two loading device designs (circular plates and circular plates with tabs), and it has developed the four possible loading device configurations. Because the OLE™ loading device designs are customized for each project based upon the dimensions of the customer's reactor to be loaded, no further steps toward utilizing Configurations 1, 2, and 4 can be taken until TubeMaster receives an order for a catalyst loading project. TubeMaster is prepared to produce Configurations 1, 2, and 4 as soon as it receives an order with the appropriate dimensions, so there is a live controversy sufficient to convey subject matter jurisdiction for a declaratory judgment action. *See EMC Corp. v. Norand Corp.*, 89 F.3d 807, 811 (Fed.Cir.1996) (stating that subject matter jurisdiction exists when a plaintiff is "prepared to produce" an allegedly infringing product).

Plaintiff also argues that this Court does not have subject matter jurisdiction to render a declaratory judgment of non-infringement as to Configuration 2 because that configuration is not sufficiently defined. This argument is premised on the fact that in the diagram of Configuration 2, the size of the gap between adjacent plates is undefined and the length of the tabs on the plates is undefined. Because of this, Cat Tech argues that, depending on the orientation of the plates and resulting placement of the tabs, a portion of the gap between the plates could be narrower than the size of a whole catalyst particle to be loaded. If that were true, Cat Tech maintains that Configuration 2 would be an infringement of the '660 patent as well. However, Cat Tech overlooks the salient feature of Configuration 2, which is that, by definition, the gap between the adjacent plates must permit a whole piece of catalyst to fit everywhere between the plates. This is the only feature that distinguishes Configuration 2 from Configuration 4,

which also utilizes circular plates with tabs but contains gaps narrower than a whole particle. Thus, the fact that the precise size of the gaps and length of the tabs are undefined does not render Configuration 2 so vague as to deprive this Court of subject matter jurisdiction to render a declaratory judgment of non-infringement. The gaps between the plates in Configuration 2 are necessarily wider than a whole particle at all points, and that is sufficient information on which the Court can base its ruling.

Cat Tech raises no argument against TubeMaster's motion for partial summary judgment regarding Configurations 1 and 2 other than these jurisdictional arguments. Because these arguments have been considered and rejected, TubeMaster's motion for a declaratory judgment of non-infringement as to Configurations 1 and 2 is **GRANTED.** Cat Tech's cross-motion for partial summary judgment as to these Configurations is **DENIED.**

### B. Infringement

TubeMaster has also moved for a partial summary judgment of non-infringement regarding Configurations 3 and 4, while Cat Tech seeks a partial summary judgment of infringement as to Configuration 3. An accused method infringes a patented method if all of the steps recited in the asserted claim are performed in the accused method, either literally or by an equivalent step. *Canton Bio–Med., Inc.*, 216 F.3d at 1370. In this case, there is a dispute over two limitations contained in the '660 patent: "substantially cover" and "spacing."

#### 1. "Substantially cover"

First, the parties dispute whether TubeMaster's OLE™ loading devices "substantially cover" at least a portion of the upper tube sheet of a reactor. The claims of the '660 patent require that the "plates rest on and *substantially cover* [**cover to a fairly**

large degree] at least a portion of the upper tube-sheet." '660 patent, col. 5 ll. 55–57, col. 7 ll. 17–19 (emphases added). There are competing calculations regarding the percentage of tube sheet covered by Cat Tech's hexagonal plates on the one hand, and TubeMaster's circular plates on the other. While this Court is of the opinion that TubeMaster's plates likely do "substantially cover" the tube sheet as that term is meant within the scope of the '660 patent, the Court need not finally determine this issue, as TubeMaster's OLE™ loading devices do not meet the "spacing" limitation of the patent, as explained below. Thus, because one of the claim limitations of the '660 patent is not met, Configurations 3 and 4 are non-infringing even if the plates do in fact substantially cover the tube sheet.

## 2. "Spacing"

■ The second claim limitation in dispute is the "spacing" requirement. The claims of the '660 patent call for "a *spacing* [gap] between adjacent plates having a width not greater than the smallest dimension of a single particle to be loaded into the multi-tube reactor, the spacing for collecting dust and partial particles." '660 patent, c. 6 ll. 58–61, c. 7 ll. 19–22 (emphases added). In other words, the patent requires a gap between the plates that is too narrow to allow for whole catalyst particles to pass through it. The parties vigorously dispute the meaning of this language. Cat Tech argues that because the limitation uses the article "a"—"a spacing"—only *one* space or gap that is narrower than a whole particle is required. The parties do not dispute that a portion of the gap between TubeMaster's circular plates (referred to as the "pinch point") is narrower than a whole catalyst particle. However, other portions of the gap between TubeMaster's circular plates are wider than a whole particle. Thus, Tube-Master argues that the spacing limitation

is not met. The Court is persuaded by TubeMaster's interpretation of the claim language.

The ingenuity of Cat Tech's invention appears to be the alignment of plates so as not to allow whole particles to fall between them, thereby preventing the waste of costly catalyst particles. The essence of this invention is the size of the gaps: if the gaps are wide enough to permit whole particles to pass through, then the most important feature of Cat Tech's design is lost.

Cat Tech appears to have acknowledged the importance of this feature in its prosecution of the '660 patent and its parent patent. Cat Tech's original application for the parent patent referenced multiple plates with a gap of an unspecified size between the plates. This application was rejected by the Patent Examiner three times because providing for polygonal plates with a space between them was "well known in the analogous art at the time of the invention." (First Office Action, May 23, 2000; Def.'s Mot. Partial Summ. J. Ex. C at 7–8.) Cat Tech's patent was not approved until Cat Tech amended the claims to add a limitation requiring each plate to be separated from adjacent plates by a space not greater than the size of a whole particle. The Patent Examiner then allowed the claims as amended, explaining, "The prior art neither teaches or suggests a loading device, as claimed, wherein each plate is displaced from adjacent plates by spacing having a width not greater than the smallest dimension of a single particle to be loaded wherein said spacing functions to collect dust and partial particles." (Notice of Allowability, Jan. 22, 2002; Def.'s Mot. Partial Summ. J. Ex. F at 2.) This history illustrates that the essence of Cat Tech's invention is the spacing between plates that allows *only* for dust and partial parti-

cles to pass through, preventing the loss of whole catalyst particles.

Prosecution history aside, it appears commonsensical to the Court that when a claim limitation requires spacing that is not large enough to allow whole particles to fall through, and a competing method utilizes spacing that *is* large enough to allow whole particles to fall through, the claim limitation is not met. Because Tube-Master's Configurations 3 and 4 do not embody the "spacing" limitation contained in the '660 patent, TubeMaster is entitled to a declaratory judgment of non-infringement. TubeMaster's motion for partial summary judgment as to Configurations 3 and 4 is **GRANTED,** and Cat Tech's cross-motion for partial summary judgment is **DENIED.**

## IV. CONCLUSION

This Court has subject matter jurisdiction to consider all four of TubeMaster's OLE™ loading device configurations. Because none of the four configurations meet the "spacing" limitation contained in the '660 patent, TubeMaster is entitled to a declaratory judgment of non-infringement as to all four configurations. TubeMaster's motion for partial summary judgment is **GRANTED;** Cat Tech's motion for partial summary judgment is **DENIED.**

**IT IS SO ORDERED.**