# United States Court of Appeals for the Federal Circuit

---

**MCKESSON TECHNOLOGIES INC. (formerly McKesson Information Solutions, LLC),**
*Plaintiff-Appellant,*

v.

**EPIC SYSTEMS CORPORATION,**
*Defendant-Appellee.*

---

2010-1291

---

Appeal from the United States District Court for the Northern District of Georgia in case no. 06-CV-2965, Chief Judge Jack T. Camp.

---

Decided: April 12, 2011

---

PAUL D. CLEMENT, King & Spalding LLP, of Washington, DC, argued for plaintiff-appellant. With him on the brief were DARYL JOSEFFER; and TIMOTHY G. BARBER and ADAM M. CONRAD, of Charlotte, North Carolina.

STEVEN D. MOORE, Kilpatrick Stockton LLP, of Atlanta, Georgia, argued for defendants-appellees. With him on the brief were WILLIAM H. BOICE, RUSSELL A. KORN, D. CLAY HOLLOWAY, and JASON D. GARDNER; and ADAM H. CHARNES of Winston-Salem, North Carolina.

Before NEWMAN, BRYSON, and LINN, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* LINN. Concurring opinion filed by *Circuit Judge* BRYSON. Dissenting opinion filed by *Circuit Judge* NEWMAN.

LINN, *Circuit Judge.*

McKesson Technologies Inc. ("McKesson") appeals the district court's grant of Epic Systems Corporation's ("Epic") renewed motion for summary judgment of noninfringement of claims 1-10, 12-14, and 16-18 of U.S. Patent No. 6,757,898 (the "'898 patent"). *McKesson Info. Solutions LLC v. Epic Sys. Corp.*, No. 06-cv-2965, 2009 WL 2915778 (N.D. Ga. Sept. 8, 2009) ("*Summary Judgment Order*"). Because McKesson is unable to attribute the performance of all the steps of the asserted method claims to a single party—namely, Epic's healthcare-provider customers—this court affirms the finding of noninfringement.

## BACKGROUND

### I. The Technology and Nature of the Dispute

McKesson's '898 patent is directed to an electronic method of communication between healthcare providers and patients involving personalized web pages for doctors and their patients. *See* '898 patent col.4 ll.3-44. This solution facilitates direct communication between patients and their doctors. *See id.* col.4 ll.24-40. For example, the '898 patent discloses a system whereby a patient can access visit-specific content online following every doctor visit. *Id.* col.4 ll.57-63. This online content "offers the patient significantly more information than he/she could have absorbed during a typical visit with the physician." *Id.* col.4 ll.63-65. This solution also increases efficiencies for both doctors and patients. *See id.* col.4

ll.24-40. For example, patients may submit appointment and prescription refill requests online and physicians may respond to these requests and manage callbacks at their convenience. *Id.* col.4 l.65–col.5 l.3; col.9 ll.37-39.

Epic is a privately owned software development company that licenses software to healthcare providers. One such product is the accused MyChart software. MyChart allows healthcare providers to associate medical records with a patient's personalized web page. MyChart also allows the patients to communicate with their healthcare provider online through these personalized MyChart web pages. In this way, patients are given access to their own medical records, treatment information, scheduling information, and other material.

Epic itself does not use the MyChart software. Rather, Epic licenses the MyChart software to healthcare providers. These licensed healthcare providers choose whether to offer MyChart as an option for their patients' use and none of these healthcare providers requires their patients to actually use the MyChart software. If a patient chooses to utilize the MyChart software, that patient "initiates a communication" to the provider by logging on to the healthcare provider's MyChart web page. Once authenticated, the patient is then presented with a personalized web page from which that patient may access his or her medical records and other such information.

## II. Proceedings Before the District Court

On December 6, 2006, McKesson sued Epic in the United States District Court for the Northern District of Georgia alleging that Epic induced infringement of claims 1-10, 12-14, and 16-18 of the '898 patent by licensing MyChart to healthcare providers who subsequently

offered it to their patients. Claim 1 is representative of the asserted claims and reads as follows:

1. A method of automatically and electronically communicating between at least one health-care provider and a plurality of users serviced by the health-care provider, said method comprising the steps of:

*initiating a communication by one of the plurality of users to the provider for information, wherein the provider has established a preexisting medical record for each user*;

enabling communication by transporting the communication . . . ;

electronically comparing content of the communication . . . ;

returning the response to the communication automatically . . . ;

said provider/patient interface providing a fully automated mechanism for generating a personalized page or area within the provider's Web site for each user serviced by the provider; and

said patient-provider interface service center for dynamically assembling and delivering customer content to said user.

'898 patent col.44 l.60–col.45 l.24 (emphasis added).

Epic first moved for summary judgment of noninfringement on January 14, 2008, on the issue of joint infringement. The parties do not dispute that Epic's customers do not directly perform the first step of the asserted method claims, the "initiating a communication" step. The district court, in denying Epic's motion, relied on *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007), and found "questions of material

fact remain as to whether the providers using Epic's MyChart software direct and control the user to perform the first step of the method" based upon an expert declaration filed by McKesson. *McKesson Info. Solutions LLC v. Epic Sys. Corp.*, No. 06-cv-2965 (N.D. Ga. May 19, 2008).

Following claim construction and the close of discovery, Epic renewed its motion for summary judgment of noninfringement on the issue of joint infringement, citing both *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318 (Fed. Cir. 2008), and McKesson's withdrawal of its expert declaration. Epic argued that because its customers neither directly perform the "initiating a communication" step of the asserted method claims nor exercise control or direction over another who performs this step, McKesson failed to demonstrate that a single party directly infringes the '898 patent and, accordingly, could not have succeeded on its claim of indirect infringement. The district court agreed and granted Epic's renewed motion for summary judgment of noninfringement on September 8, 2009. *Summary Judgment Order*.

McKesson appealed and this court has jurisdiction under 28 U.S.C. § 1295(a)(1).

### DISCUSSION

This court reviews summary judgment of noninfringement without deference to ascertain whether genuine issues of material fact exist. *BMC Res.*, 498 F.3d at 1378. Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In assessing the evidence, all reasonable inferences are drawn in favor of the non-movant. *Del. Valley Floral*

*Grp., Inc. v. Shaw Rose Nets, LLC*, 597 F.3d 1374, 1379 (Fed. Cir. 2010).

McKesson alleged induced infringement, which requires a direct infringer. *BMC Res.*, 498 F.3d at 1379. A method claim is directly infringed only if each step of the claimed method is performed by a single party. *Id.* at 1378-79. McKesson and Epic agree that no single party performs every step of the asserted method claims. Thus, the sole issue presented by this appeal relates to whether the relationship between Epic's customers (MyChart providers) and the MyChart users is such that performance of the "initiating a communication" step may be attributed to the MyChart providers.

In both *BMC Resources* and *Muniauction*, this court confronted the situation where the actions of multiple parties combined to perform the steps of a claimed method, but no single party performed every step of the claimed method. This court concluded that "where the actions of multiple parties combine to perform every step of a claimed method, the claim is directly infringed only if one party exercises 'control or direction' over the entire process such that every step is attributable to the controlling party." *Muniauction*, 532 F.3d at 1329 (citing *BMC Res.*, 498 F.3d at 1380-81). "[T]he 'control or direction' standard is satisfied in situations where the law would traditionally hold the accused direct infringer vicariously liable for the acts committed by another party that are required to complete performance of a claimed method." *Id.* at 1330 (citing *BMC Res.*, 498 F.3d at 1379).

Recently, in *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 629 F.3d 1311 (Fed. Cir. 2010), the patentee sought to attribute the actions of multiple parties, each performing a subset of the claimed method steps, to a single party for a finding of direct infringement. Akamai's asserted method claims were directed towards a

content delivery service that permitted a content provider to outsource the storage and delivery of discrete portions of its website content. *Id.* at 1351. It was undisputed that Limelight performed all but the "tagging" and "serving" steps of the asserted method claims. *Id.* at 1317. Limelight instead provided a service to its customers along with the information necessary for its customers to perform the "tagging" and "serving" steps themselves. *Id.* Additionally, Limelight's standard customer contract, while not obligating Limelight's customers to perform the "tagging" or "serving" steps, explained that the customer would have to perform this step itself if the customer decided to take advantage of Limelight's service. *Id.* at 1321.

The court in *Akamai* held "there can only be joint infringement when there is an agency relationship between the parties who perform the method steps or when one party is contractually obligated to the other to perform the steps." *Id.* at 1320. The court concluded that Limelight's customers were not performing any of the claimed method steps as agents for Limelight nor were they contractually obligated to perform any of the claimed method steps. *Id.* Because Limelight did not perform all of the steps of the asserted method claims and there was no basis to attribute to Limelight the actions of its customers who carried out the remaining steps, this court affirmed the district court's judgment as a matter of law of noninfringement. *Id.* at 1322.

In this case, nothing indicates that MyChart users are performing any of the claimed method steps as agents for the MyChart providers. Nor does McKesson argue an agency relationship existed here. Indeed, McKesson faulted the district court for applying this court's control or direction test as one "that is satisfied only . . . through an employment or other agency relationship, such that

the other acts out of obligation rather than consent." McKesson Br. 27. McKesson instead argues that the special nature of the doctor-patient relationship is something more than a mere arms length relationship and is sufficient to provide attribution, because "[t]he phrase 'doctor's orders' says it all" and because of the existence of a doctor-patient privilege. *Id.* at 18, 31. This argument misses the mark. A doctor-patient relationship does not by itself give rise to an agency relationship or impose on patients a contractual obligation such that the voluntary actions of patients can be said to represent the vicarious actions of their doctors.

Nor is there anything indicating that MyChart users were contractually obligated to perform any of the claimed method steps on behalf of the MyChart providers. These facts are undisputed. MyChart users choose whether or not to initiate communications with their providers and are under no obligation to do so. As in both *Akamai* and *Muniauction*, MyChart providers simply control the users' access to MyChart. *Akamai* 629 F.3d at 1321 (finding Limelight's customers chose whether to perform the "tagging" or "scanning" steps); *Muniauction*, 532 F.3d at 1330 (finding that although the accused infringer controlled access to its system and instructed bidders on its use, that was insufficient to incur liability for direct infringement). Here, as in *Akamai*, MyChart users "acted principally for their own benefit and under their own control." *Akamai* 629 F.3d at 1321.

McKesson has identified no viable legal theory under which the actions of MyChart users may be attributed to Epic's customers. Without an agency relationship or contractual obligation, the MyChart users' actions cannot be attributed to the MyChart providers, Epic's customers. Thus, McKesson has failed to demonstrate that any single party directly infringes the '898 patent. Absent direct infringement, Epic cannot be liable for indirect infringe-

ment. *BMC Res.*, 498 F.3d at 1379 (stating "[i]ndirect infringement requires, as a predicate, a finding that some party amongst the accused actors has committed the entire act of direct infringement.").

McKesson argues that this court's precedents contravene ordinary principles of law involving concerted action. Specifically, McKesson compares this court's precedents with joint tortfeasor liability and vicarious copyright liability. Under tort law, according to McKesson, joint liability attaches "where the acts of each of two or more parties, standing alone, would not be wrongful, but together they cause harm to the plaintiff." McKesson Br. 20 (citing Prosser & Keeton on Torts § 52, at 354 (5th ed. 1984)). Similarly, McKesson cites various copyright cases where courts have found vicarious copyright liability stemming from a defendant's decision to profit from infringement "while declining to exercise a right to stop or limit it." McKesson Br. 23 (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)).

This court finds McKesson's invitation to depart from our precedents unpersuasive, let alone beyond our authority as a three-judge panel. *See Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988) ("This court has adopted the rule that prior decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned *in banc*."). Patent law is a creature of statute and "expanding the rules governing direct infringement to reach independent conduct of multiple actors would subvert the statutory scheme for indirect infringement." *BMC Res.*, 498 F.3d at 1381. The notion of indirect patent infringement, encompassing contributory and induced infringement, already addresses the joint tortfeasor problem. *See* 35 U.S.C. §§ 271(b), (c). Indeed, an indirect infringer is a type of joint tortfeasor

because, while his actions alone do not harm the patentee, his actions along with another cause a single harm to the plaintiff. *See Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 500 (1964). That "single harm," however, is direct patent infringement, a strict-liability offense limited to those who practice each and every element of the claimed invention. *BMC Res.*, 498 F.3d at 1381; *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1570 n.2 (Fed. Cir. 1996). Absent direct infringement, the patentee has not suffered a compensable harm. *BMC Res.*, 498 F.3d at 1379; *cf. Grokster*, 545 U.S. at 930 (stating "[o]ne infringes contributorily by intentionally inducing or encouraging *direct infringement* and infringes vicariously by profiting from *direct infringement* while declining to exercise a right to stop or limit it." (citations omitted) (emphases added)). Finally, in patent law, unlike in other areas of tort law, the patentee specifically defines the boundaries of his or her exclusive rights and provides notice to the public to permit avoidance of infringement. This stands in sharp contrast to the circumstances surrounding a joint tort where the victim has no ability to define the injurious conduct upfront and where, absent joint liability, the victim would stand uncompensated as a consequence.

McKesson also relies upon *Peerless Equipment Co. v. W.H. Miner, Inc.*, 93 F.2d 98 (7th Cir. 1937), in arguing that the regional courts of appeals have affirmed liability where one party performed most of the patented method and simply handed it over to another party to complete the method. *Id.* at 105 (finding liability where a seller of gears knowingly left it to customers to flatten the gears' crown, thereby "completing the final step of the [patented] process."). The *Peerless* opinion is neither binding nor persuasive. This court has time and again rejected liability where one party performed most of the patented method and left it to another party to complete the method in the absence of any contractual obligation or

agency relationship that would vicariously attribute the acts of the one party to the other. *See Akamai* 629 F.3d at 1322; *Muniauction,* 532 F.3d at 1330; *BMC Res.,* 498 F.3d at 1381-82. Nor is this court persuaded by the conclusory reasoning in *Peerless* affirming the district court's finding of contributory infringement. *See Peerless*, 93 F.2d at 105 (stating "we think that finding is correct.").

CONCLUSION

For the foregoing reasons, this court affirms the district court's grant of Epic's renewed motion for summary judgment of noninfringement of the '898 patent.

**AFFIRMED**

# United States Court of Appeals for the Federal Circuit

---

**MCKESSON TECHNOLOGIES INC. (formerly McKesson Information Solutions, LLC),**
*Plaintiff-Appellant,*

**v.**

**EPIC SYSTEMS CORPORATION,**
*Defendant-Appellee.*

---

2010-1291

---

Appeal from the United States District Court for the Northern District of Georgia in Case No. 06-CV-2965, Chief Judge Jack T. Camp.

---

BRYSON, *Circuit Judge*, concurring.

I agree that the decision in this case is correct in light of this court's decisions in *BMC Resources*, *Muniauction*, and *Akamai Technologies*. Whether those decisions are correct is another question, one that is close enough and important enough that it may warrant review by the en banc court in an appropriate case.

# United States Court of Appeals for the Federal Circuit

---

**MCKESSON TECHNOLOGIES INC. (formerly McKesson Information Solutions, LLC),**
*Plaintiff-Appellant,*

v.

**EPIC SYSTEMS CORPORATION,**
*Defendant-Appellee.*

---

2010-1291

---

Appeal from the United States District Court for the Northern District of Georgia in Case No. 06-CV-2965, Chief Judge Jack T. Camp.

---

NEWMAN, *Circuit Judge*, dissenting.

The court again departs from the "prior panel rule," which requires appellate panels to conform to the earlier of conflicting panel precedent. Instead, the court again selectively applies some newly minted panel rulings while ignoring others, adding to the conflict with precedent. Our obligation is either to obtain *en banc* resolution of divergent statements in various panel opinions, or to follow the earlier

panel holding, as do the other circuits.[1]  The court does neither.  I must, respectfully, dissent.

The question is whether there can be infringement of a patented method, when a step of the method is performed by an entity that is not "controlled or directed" by the same entity that performs the other steps.  Interactive methods have been enabled by advances in computer-based technology.  In the McKesson method, a patient initiates inquiry into various kinds of information relating to the patient and maintained by the patient's physician; the panel majority holds that even if every step of the claimed method is performed there can be no infringement, on the theory that there is no direct infringement and thus no indirect infringement.  Some recent panel holdings are of similar vein, holding that neither collaboration nor joint action nor facilitation nor authorization nor invitation can overcome the immutable barrier to infringement when all of the participating entities are not under the "control or direction" of a mastermind infringer.

According to the panel majority today, there can be no infringement of this interactive patent, on the theory that the physician does not control or direct the patient who performs the step of entering the system maintained by the physician.  The court thus eliminates the patent incentive from such interactive procedures, rendering McKesson's new method, and all such interactive methods, open for infringement without redress.  However, other panels of this court, and the Supreme Court, have held that there can be infringement liability when steps of the claimed method are performed by different entities.  This new retrenchment of

---

[1]    *See Newell Cos., Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988); *cf. Teague v. City of Flower Mound, Tex.*, 179 F.3d 377, 383 (5th Cir. 1999) (referring to the "rule of orderliness").

the patent grant disserves commerce, fairness, and the innovation incentive.

The patent in suit, U.S. Patent No. 6,757,898, is directed to "a communication system for providing automated, electronic communications between at least one health-care provider and a plurality of users of the health-care provider." '898 patent, abstract. The '898 patent describes the operation of personalized web pages for patients. The patent states that "once the patient has logged into his/her own Web page," the patient can access data in the practitioner's scheduling and billing systems and a variety of practice-based services including "appointment requests and updates, prescription refills, online triage, health search information and the like." Col.4 ll.50-56.

Computer-implemented methods that are new, useful, nonobvious, described, enabled, and particularly claimed, are not excluded from the patent system simply because their performance involves more than one entity. Here the patient initiates the interaction with the health-care provider, by performing the first step of claim 1:

1.  A method of automatically and electronically communicating between at least one health-care provider and a plurality of users serviced by the health-care provider, said method comprising the steps of:

*initiating a communication by one of the plurality of users to the provider for information, wherein the provider has established a preexisting medical record for each user*;

enabling communication by transporting the communication through a provider/patient interface over an electronic communication network to a Web

site which is unique to the provider, whereupon the communication is automatically reformatted and processed or stored on a central server, said Web site supported by or in communication with the central server through a provider-patient interface service center;

electronically comparing content of the communication with mapped content, which has been previously provided by the provider to the central server, to formulate a response as a static or dynamic object, or a combined static and dynamic object; and

returning the response to the communication automatically to the user's computer, whereupon the response is read by the user or stored on the user's computers

said provider/patient interface providing a fully automated mechanism for generating a personalized page or area within the provider's Web site for each user serviced by the provider; and

said patient-provider interface service center for dynamically assembling and delivering custom content to said user.

All but the first step are performed by or controlled or directed by the health-care provider. The court today holds that the claim cannot be infringed as a matter of law, on the theory that a "single-entity rule" is violated because the provider does not control or direct the patient who initiates the communication, in that the patient is neither the agent of the health-care provider nor contractually obligated to initiate the communication. Maj. Op. at 8-9. There is no such rule of law. Even the recent creation of a "single-entity rule" by this court does not go that far.

Interactive methods that meet all of the conditions and requirements of the Patent Act are fully entitled to participate in the patent system. The court's removal of interactive methods from the purview of the patent system, through its newly minted and now enlarged "single-entity rule," is contrary to law and policy. Conflicts in precedent require resolution, not enlargement, for inconsistent precedent is as much a deterrent to innovation as is elimination of the patent right entirely.

I

CONFLICT WITH PRECEDENT

Precedent requires that: "For infringement of a process invention, all of the claimed steps of the process must be performed." *EMI Grp. N. Am., Inc. v. Intel Corp.*, 157 F.3d 887, 896 (Fed. Cir. 1998). The panel majority now rules that: "A method claim is directly infringed only if each step of the claimed method is performed by a single party." Maj. Op. at 6. Since the user (patient), not the provider (physician), decides whether to initiate the communication, the court holds that the provider does not "control or direct" whether the user takes this initiating step. Thus the court holds, first, that the method claim cannot be directly infringed, as a matter of law. The court then holds that without direct infringement there cannot be indirect infringement, such as induced or contributory infringement, as a matter of law. Thus the court concludes that the claims can never be infringed, although the patent meets every requirement of patentability and every step of the claimed method is practiced. These rulings and conclusion are contrary to statute and precedent.

The patent statute grants to every patentee the right to exclude others from practicing the patented invention:

> 35 U.S.C. §154(a)(1)  Every patent shall contain a short title of the invention and a grant to the patentee, his heirs and assigns, of the right to exclude others from making, using, offering for sale, or selling the invention . . . .

35 U.S.C. §154(a)(1) (2006).  "The franchise which the patent grants, consists altogether in the right to exclude every one from making, using, or vending the thing patented, without the permission of the patentee." *Bloomer v. McQuewan*, 55 U.S. 539, 549 (1852); *see also Crown Die & Tool Co. v. Nye Tool & Machine Works*, 261 U.S. 24, 36 (1923).  The present statute codifies this right:

> 35 U.S.C. §271(a)  Except as otherwise provided in this title, whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent.

35 U.S.C. §271(a) (2006).  A patent that can never be infringed is not a patent in the definition of the law, for a patent that cannot be infringed does not have the "right to exclude."  This court's elimination of infringement, by creating a new but far-reaching restriction, is inappropriate.  "[C]ourts 'should not read into the patent laws limitations or conditions which the legislature has not expressed.'" *Bilski v. Kappos*, 130 S.Ct. 3218, 3226 (2010) (quoting *Diamond v. Diehr*, 450 U.S. 175, 182 (1981)).

These fundamental principles have not changed; they are the foundation of the patent system.

As technology advanced, the variety of invention and modes of infringement has been accommodated by statute, by precedent, and if needed by legislation, in fidelity to the

purposes and policy of patent law. For example, the liability of "participants" in infringement was summarized by Professor Robinson:

> The nature of the act of infringement is indicated by that of the exclusive right which it invades. . . . [E]very method by which the invention can be made available for the benefit of the infringer, and any person who participates in any wrongful appropriation of the invention becomes thereby a violator of the rights protected by the patent.

3 William C. Robinson, *The Law of Patents for Useful Inventions* §897 (1890) (reprint 1972). This foundation is violated by the introduction of an absolute bar to enforcement of patents that are directed to information-age electronic methods, simply because more than one entity is involved. Neither statute nor precedent supports this court's pronouncement that the patentee's right to exclude is limited to situations in which a single entity performs or controls or directs every step of the claimed method, whatever the method and whatever the relationship among the participants. Precedent elaborating on direct and indirect infringement had evolved to accommodate, not to limit, the patentee's right to exclude.

The district court deemed itself bound by this court's aberrant "single entity" decisions, although not without remarking on the flaws:

> [T]he single entity rule and *BMC*'s interpretation thereof severely limits the protection provided for patents which would otherwise be valid and enforceable. . . . As long as the sale of a product constitutes an arms length transaction between the customer and the infringing company, which is insufficient to create vicarious liability, the patent

> holder would likely have no redress against the in-
> fringer. This result weakens the policy of providing
> protection to those who devote the time and re-
> sources to develop otherwise novel and patentable
> methods.

*McKesson Info. Solutions LLC v. Epic Sys. Corp.*, No. 06-cv-2965, 2009 WL 2915778, at *7 (N.D. Ga. Sept. 8, 2009). The district court referred to *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007), *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318 (Fed. Cir. 2007), and *Global Patent Holdings, LLC v. Panthers BRHC LLC*, 586 F. Supp. 2d 1331 (S.D. Fla. 2008), *aff'd*, 318 F. App'x 908 (Fed. Cir. 2009) (Table), and stated that these cases "compel" its flawed decision.

In *BMC Resources* the defendant was one of three independent entities needed to perform the claim steps of debit network, financial institution, and payment services provider; the court observed that the defendant payment services provider did not control or direct either the debit networks or the financial institutions that performed the other steps. In *Muniauction* this court held that the defendant, who controlled access to its auction system and instructed bidders on its use, was not liable for direct infringement, but did not hold that indirect infringement was barred. In *Global Patent* a district court applied the evolving "single-entity rule" and held that the patentee could not state a claim for either direct or indirect infringement although the defendant "puts Javascript programs on the remote user's computer to allow the process to begin." 586 F. Supp. 2d at 1335. Although the *BMC Resources* decision is supportable on its facts, the enlargement of its holding is not.

Applying these decisions to the '898 patent, the district court held that because the patient independently initiates the interaction with the physician's records, there can be no joint infringement and thus no direct infringement of the claim. Applying the rule that there must be direct infringement before there can be indirect infringement, *see Aro Mfg. Co. v. Convertible Top Replacement Co., Inc.*, 377 U.S. 476, 483 (1964) (referring to "the fundamental precept that there can be no contributory infringement in the absence of a direct infringement."), the court held that McKesson could not enforce its patent against anyone. This court agrees, although it is not disputed every major step of the patented process is practiced by a single entity, with authorized initiation by the patient.

This court's error is the pronouncement of the "single-entity rule" as an absolute rule of law—for the multiple independent entities required to carry out the claimed method in *BMC Resources* could have led to a fact-based decision of non-liability on application of the ordinary rules of tort liability. Instead, the "control or direction" requirement is announced as extending to all interactive situations, whatever the relationship of the participants and whatever their participation. Here, for example, the "uncontrolled" entity, the patient, initiates the process by accessing the physician's system using the access code provided by the physician; the physician's office then performs the other steps of the method. The court today holds that such a claim cannot be infringed, whether on a theory of joint or collaborative or induced infringement. However, no rule of law, no precedent, prohibits patenting and enforcing a method that is performed by interacting entities. The cases from which the court created this theory do not require otherwise.

Indeed, the cases cited for support in *BMC Resources* and *Muniauction* do not deal with the form of interactive situation to which they are now being applied. These cases include *Canton Bio-Med., Inc. v. Integrated Liner Technologies., Inc.*, 216 F.3d 1367, 1370 (Fed. Cir. 2000) (explaining that the "all-elements rule" of the doctrine of equivalents applies to method claims); *General Foods Corp. v. Studiengesellschaft Kohle mbH*, 972 F.2d 1272, 1274 (Fed. Cir. 1992) (explaining that "each claim is an entity which must be considered as a whole," and reversing invalidity of method claims for double patenting (emphases omitted)); *Joy Technologies, Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993) ("[T]he sale of equipment to perform a process is not a sale of the process within the meaning of section 271(a)"); *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004) ("Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement, though the direct infringer is typically someone other than the defendant accused of indirect infringement"); *NTP, Inc. v. Research in Motion*, 418 F.3d 1282, 1318 (Fed. Cir. 2005) ("[A] process cannot be used 'within' the United States as required by section 271(a) unless each of the steps is performed within this country"). I am surprised at my colleagues' holding that these cases require an absolute "single-entity rule" of infringement, for none of these cases turned on whether different entities independently or interactively perform different steps of a method claim.

My colleagues mention the *Aro* cases on contributory infringement as requiring that there can never be joint or collaborative infringement. That interpretation is inapt. In *Aro Manufacturing Co. v. Convertible Top Replacement Co., Inc.*, 365 U.S. 336 (1961) the Court held that car owners did not directly infringe claims directed to a convertible top when the car owners replaced the fabric. In *Aro Manufac-*

*turing Co. v. Convertible Top Replacement Co., Inc.*, 377 U.S. 476 (1964), the Court drew upon common-law principles, not a new "rule of law," in stating that "a contributory infringer is a species of joint-tortfeasor, who is held liable because he has contributed with another to the causing of a single harm to the plaintiff." *Id.* at 500. There was no issue of single entities or of control or direction. Earlier cases recognized the tortious nature of infringement, and the foundation of tort remedy. *See, e.g., Carbice Corp. of Am. v. Am. Patents Dev. Corp.*, 283 U.S. 27, 33 (1931) ("Infringement, whether direct or contributory, is essentially a tort, and implies invasion of some right of the patentee."); *Dowagiac Mfg. Co. v. Minnesota Moline Plow Co.*, 235 U.S. 641, 648 (1915) ("[T]he exclusive right conferred by the patent was property, and the infringement was a tortious taking of a part of that property.").

The complainant here is not attempting to sue all patients and physicians who use the patented system, but is seeking to enforce the patent against the purveyor of the system, on a theory of inducement to infringe. The patentee's position is that the patent is directly infringed jointly, and that the purveyor of the claimed method thereby induces direct infringement. The common-law concept of joint tortfeasor has long been established in the patent arena and in its application the cases have turned on their particular facts, not on some indefeasible "single entity" bar created as a new rule of law. Questions of joint liability turned on participation, collaboration, or other relevant facts, as courts applied the experience of the common law in a variety of factual situations. The state of the law of joint infringement was summarized in a jury instruction in *On Demand Machine Co. v. Ingram Industries, Inc.,* 442 F.3d 1331 (Fed. Cir. 2006), as follows:

> It is not necessary for the acts that constitute infringement to be performed by one person or entity. When infringement results from the participation and combined action(s) of more than one person or entity, they are all joint infringers and jointly liable for patent infringement. Infringement of a patented process or method cannot be avoided by having another perform one step of the process or method. Where the infringement is the result of the participation and combined action(s) of one or more persons or entities, they are joint infringers and are jointly liable for the infringement.

442 F.3d at 1344-45. This court stated that "[w]e discern no flaw in this instruction as a statement of law," although the court concluded as to that case that "no reasonable jury could find infringement, on the correct claim construction." *Id.* at 1345.

The present disregard of precedent is reflected in another recent decision, where the court held that when the two entities "formed a strategic partnership, enabled [nonetheless] their two programs to work together, and collaborated to sell the two programs as a unit," there could be no infringement of the asserted method claims, as a matter of law. *Golden Hour Data Sys., Inc. v. emCharts, Inc.*, 614 F.3d 1367, 1371 (Fed. Cir. 2010). The court, reversing the jury verdict, found that "the evidence of control or direction was insufficient as a matter of law to uphold a finding of joint infringement." *Id.* at 1380.

Other recent rulings of this court are inconsistent. In *Cross Medical Products v. Medtronic Sofamor Danek*, 424 F.3d 1293 (Fed. Cir. 2005) the apparatus claim required that an orthopedic implant is in contact with bone inside the body; the court held that the implant before installation did

not directly infringe the apparatus claim, and that the implant provider's liability for direct infringement could not turn on the act of a surgeon installing the implant as directed, because the surgeon was not an agent of the provider; nonetheless, this court remanded for determination of whether the provider was liable for indirect infringement. In *Fantasy Sports Properties v. Sportsline.com, Inc.*, 287 F.3d 1108 (Fed. Cir. 2002) the claim was for a computer-simulated football game with certain features; the district court held that a defendant-vendor of the software/game could not be liable for contributory infringement because the plaintiff-patentee did not prove that any users operated the software in an infringing manner. However, in contrast with the present holding, the court left open the possibility that the vendor was liable for direct infringement, rejecting the vendor's argument that it could not be liable for direct infringement because the software was operated by users on their own computers, outside of the control and direction of the vendor. The court held that "[t]he users of the [accused] product therefore access the necessary software to play fantasy football at [the vendor's] server on the Internet, and thus that software is maintained and controlled by [the vendor]." *Id.* at 1119.

Again in contrast with these principles, in *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 629 F.3d 1311 (Fed. Cir. 2010), a panel of the court proposed to promote a version of these aberrant holdings to "Federal Circuit law," stating:

> This court therefore holds as a matter of Federal Circuit law that there can only be joint infringement when there is an agency relationship between the parties who perform the method steps or when one party is contractually obligated to the other to perform the steps.

629 F.3d at 1320. However, if this change of law is to be "a matter of Federal Circuit law," conflicting holdings must be overturned en banc, not by a three-judge panel. In confusing contrast, in *Centillion Data Systems, LLC v. Qwest Communications International, Inc.*, 631 F.3d 1279 (Fed. Cir. 2011), a panel of this court, citing *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005), held that, unlike a claim to an interactive "method," direct infringement of a claim to an interactive "system," wherein elements of the system are physically controlled by different entities such as an independent "user," is not subject to a "single-entity rule":

> By causing the system as a whole to perform this processing and obtaining the benefit of the result, the customer has 'used' the system under §271(a). It makes no difference that the back-end processing is physically possessed by [the defendant]. The customer is a single 'user' of the system and because there is a single user, there is no need for the vicarious liability analysis from *BMC* or *Cross Medical*.

631 F.3d at 1285. And in *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011) this court wrote "[t]hat other parties are necessary to complete the environment in which the claimed element functions does not necessarily divide the infringement between the necessary parties." 632 F.3d at 1309. The panel majority's ruling today further adds to the confusion of "use" of interactive inventions, as the panel majority holds that an interactive "method" is only used when a single entity performs or controls or directs every step of the claimed method, even if, as here, a single entity "cause[s] the [process] as a whole to perform ... and obtain[s] the benefit of the result." *Centillion*, 631 F.3d at 1285. As "Congress did not use technical or occult

phrases" in "defining the extent of the rights and privileges secured to the patentee," *Bauer & Cie v. O'Donnell*, 229 U.S. 1, 11 (1913), we too should avoid "technical or occult" interpretations of §271(a). Panels of this court distinguishing between practice of an element of a system, and practice of an element of a method, does not add clarity or predictability to patent law.

Earlier cases applied the law of infringement as a straightforward matter of tortious responsibility. For example, in *Fromson v. Advance Offset Plate, Inc.*, 720 F.2d 1565 (Fed. Cir. 1985), the court held that contributory infringement was possible when a step of a method claim was practiced by the customer, and explained that "because [the manufacturer's] customers, not [the manufacturer], applied the diazo coating, [the manufacturer] cannot be liable for direct infringement with respect to those plates but could be liable for contributory infringement." *Id.* at 1568. This has been the law. It has never had en banc reversal.

## II

## THE MCKESSON CLAIMS

McKesson argues that there is joint infringement even on the "control or direction" theory, stating that the healthcare provider does exercise control or direction of the use of the MyChart system by patients. McKesson states that:

> Before patients can even use MyChart, healthcare providers enter into a broader doctor-patient relationship, enroll patients in the program, and create personalized webpages for the patients, in order to facilitate the healthcare providers' provision of services to patients. Only enrolled patients with usernames and passwords may access their personalized webpages created by the healthcare providers,

which are linked to medical records created by providers for each patient. Patients enter into a contractual agreement covering their use of MyChart. The healthcare providers provide instructions on every aspect of using the webpages. They can end a patient's use of the system at any time. And they even formulate some communications for patients.

McKesson Br. 16-17 (internal citations omitted). My colleagues deem this relationship irrelevant, ruling that it is the patient's choice whether to initiate a communication, and use of the system is not required by the physician.

McKesson argues that the doctor-patient relationship is far from the "arms-length cooperation" that was held inadequate to provide joint infringement in *Muniauction* or in *BMC Resources*, and that the control-or-direction test must be read in light of general principles of tort liability, citing Restatement Second of Torts §875 ("Each of two or more persons whose tortious conduct is a legal cause of a single and indivisible harm to the injured party is subject to liability to the injured party for the entire harm."); §876(a) ("For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he does a tortious act in concert with the other or pursuant to a common design with him"); §877(c) ("For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he permits the other to act upon his premises or with his instrumentalities, knowing or having reason to know that the other is acting or will act tortuously").

No patent principle or public policy, and no statutory requirement, warrants departure from these common law principles. *See PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1358 (Fed. Cir. 2007) ("The 1952 Act did not make a substantive change in the law of contributory

infringement, but it divided the judicially created category of contributory infringement into two statutory subsections.").  The question is that "of identifying the circumstances in which it is just to hold one individual accountable for the actions of another." *Sony Corp. Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 435 (1984) (discussing copyright infringement).  To the extent that recent panel rulings including *BMC Resources*, *Muniauction*, *Golden Hour*, and *Akamai* appear to stand for an absolute requirement that there must be direct infringement by a single entity who performs or controls or directs every step of the claimed method before there can be indirect infringement, these rulings are contravened by precedent.

This case does not raise the specter of a patentee "impermissibly broaden[ing] the physical or temporal scope of the patent . . . in a manner that has anticompetitive effects," in the words of *Princo Corp. v. ITC*, 616 F.3d 1318, 1328 (Fed. Cir. 2010) (en banc).  To the contrary, this is a case of new technology adapted to public benefit—an advance supported by patent policy.  Today's holding, and the few recent cases on which it builds, have the curious effect of removing from patent eligibility the burgeoning body of interactive computer-managed advances.

A patent that cannot be enforced on any theory of infringement, is not a statutory patent right.  It is a cynical, and expensive, delusion to encourage innovators to develop new interactive procedures, only to find that the courts will not recognize the patent because the participants are independent entities.  From the error, confusion, and unfairness of this ruling, I respectfully dissent.